1   COOLEY LLP
    MICHAEL G. RHODES (116127)
2   (rhodesmg@cooley.com)
    101 California Street, 5th Floor
3   San Francisco, CA 94111
    Telephone:   (415) 693-2000
4   Facsimile:   (415) 693-2222

5   MICHELLE C. DOOLIN (179445)
    (doolinmc@cooley.com)
6   DARCIE A. TILLY (239715)
    (dtilly@cooley.com)
7   ERIN E. GOODSELL (262967)
    (egoodsell@cooley.com)
8   4401 Eastgate Mall
    San Diego, CA 92121
9   Telephone:   (858) 550-6000
    Facsimile:   (858) 550-6420

10

11  Attorneys for Defendant
    TIME INC.

12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15

16  NICHOLAS MURRAY, individually and on        Case No.
    behalf of all others similarly situated,
17                                              NOTICE OF REMOVAL OF ACTION
                     Plaintiff,                 (28 U.S.C. §§ 1332, 1441, & 1453)
18
           v.
19
    TIME INC., a Delaware corporation,
20
                     Defendant.
21

22  TO PLAINTIFF, HIS ATTORNEYS, AND THE ABOVE-CAPTIONED COURT:

23        PLEASE TAKE NOTICE that defendant Time Inc. ("Time") removes the above-

24  captioned action from the Superior Court of the State of California for the County of San

25  Francisco, where the action is now pending, to the United States District Court for the Northern

26  District of California. This civil action is removed on the basis of diversity jurisdiction under 28

27  U.S.C. §§ 1332, 1441, and 1453. For the reasons set forth below, this Court has subject matter

28

1    jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C.

2    §§ 1332 and 1453.

3                    **PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL**

4         1.    On or about December 22, 2011 plaintiff Nicholas Murray commenced a civil

5    action in the Superior Court of the State of California for the County of San Francisco, entitled

6    *Nicholas Murray v. Time Inc.*, Case No. CGC-11-516868, by filing a complaint.

7         2.    The complaint, which is styled as a class action, alleges two causes of action.  The

8    first cause of action is for an alleged violation of California Civil Code § 1798.83. (Compl., ¶¶ 8,

9    31-34, 46-59.)  The second cause of action is for an alleged violation of California Business &

10   Professions Code §§ 17200, *et seq.*   (*Id.* at ¶¶ 60-65.)  Plaintiff's complaint arises from his

11   subscription to TIME magazine. (*Id.*, at ¶¶ 36-38.)

12        3.    On or about December 22, 2011 Plaintiff applied for approval of complex

13   designation in the Superior Court of the State of California for the County of San Francisco.

14        4.    On or about December 28, 2011 Plaintiff filed a motion for class certification in

15   the Superior Court of the State of California for the County of San Francisco.  The hearing for the

16   class certification motion is currently scheduled for March 14, 2012.

17        5.    Time was subsequently served with the summons, complaint, class certification

18   motion, application for approval of complex designation, and other documents on December 30,

19   2011. A true and correct copy of the summons is attached as Exhibit A.  A true and correct copy

20   of the complaint is attached as Exhibit B.   A true and correct copy of the class certification

21   motion is attached as Exhibit C.   A true and correct copy of the application for complex

22   designation is attached as Exhibit D.

23        6.    Time is also aware that the court has calendared a case management conference on

24   May 25, 2012.

25        7.    Time is not aware of the filing of any other process or pleading.

26        8.    This Notice of Removal is timely because Time filed it within thirty days of when

27   Plaintiff served it with the summons and complaint. *See* 28 U.S.C. § 1446(b).

28

NOTICE OF REMOVAL OF ACTION
CASE NO.

9.    Time will give Plaintiff written notice as required under 28 U.S.C. § 1446(d) by serving Plaintiff, through his counsel of record, with this Notice of Removal and all documents filed in support thereof and concurrently herewith on the date of filing of this Notice of Removal.

**SUBJECT MATTER JURISDICTION**

10.    Under CAFA, a district court shall have original jurisdiction over any civil action styled as a class action in which: (1) the number of members of the proposed plaintiff class is not less than one hundred, in the aggregate; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (3) "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2) & (d)(5). If a state court putative class action meets all of these three requirements, it may be removed to federal court. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[.]"). This action meets each of CAFA's requirements.

**THE PROPOSED CLASS DOES NOT HAVE FEWER THAN 100 MEMBERS**

11.    Plaintiff seeks to certify a class defined as: "All California residents who have provided personal information to Time." (Compl., ¶ 39.)

12.    Plaintiff alleges that the class "consist[s] of millions of individuals." (*Id.*, ¶ 40.)

13.    Without conceding liability, appropriateness of class treatment, appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claim for relief, if the allegations in Plaintiff's Complaint are accepted as true, there are more that 100 proposed class members. (*Id.*, ¶ 40); *see Phillips v. Wellpoint, Inc.*, No. 10-cv-357-JPG, 2010 WL 4877718, at *2 (S.D. Ill. Nov. 23, 2010) (relying on the allegation in plaintiff's complaint that "the proposed class will exceed 20,000 policyholders and group members" to support a finding of jurisdiction under CAFA).

14.    Accordingly, CAFA's first requirement is satisfied. *See* 28 U.S.C. § 1332(d)(5)(B).

**THE AMOUNT IN CONTROVERSY EXCEEDS $5 MILLION**

15.    Plaintiff's complaint does not plead a specific amount of damages. As such, removal is proper if Time establishes by a preponderance of evidence that Plaintiff demands in

NOTICE OF REMOVAL OF ACTION
CASE NO.

1   excess of $5 million in damages in the aggregate for himself and the putative class. *See Abrego*

2   *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not

3   specify the amount of damages sought, the removing defendant must prove by a preponderance of

4   the evidence that the amount in controversy requirement has been met.").

5       16.     "In measuring the amount in controversy, a court must assume that the allegations

6   of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in

7   the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

8   "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what

9   a defendant will *actually* owe." *Id.* (emphasis in original); *accord Deehan v. Amerigas Partners,*

10  *L.P.*, No. 08cv1009 BTM (JMA), 2008 WL 4104475, at *2 (S.D. Cal. Sept. 2, 2008); *Muniz v.*

11  *Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *3 (E.D. Cal.

12  May 1, 2007).

13      17.     Time's burden of proof on removal "is not daunting, as courts recognize that . . . a

14  removing defendant is *not* obligated to research, state, and prove the plaintiff's claims for

15  damages." *Korn*, 536 F. Supp. 2d at 1204-05 (emphasis in original; internal quotation marks

16  removed). Indeed, "[w]here a statutory maximum is specified, courts may consider the maximum

17  statutory penalty available in determining whether the jurisdictional amount in controversy

18  requirement is met." *Id.* at 1205; *accord Deehan*, 2008 WL 4104475, at *2.

19      18.     Plaintiff's claim for relief for alleged violations of California Civil Code § 1798.83

20  carries a maximum statutory penalty of $500 per violation, or $3,000 per violation if the violation

21  is willful. Cal. Civ. Code § 1798.84(c). Plaintiff alleges entitlement to civil penalties of $3,000

22  per violation, the statutory maximum for a willful violation, for himself and each class member.

23  (Compl., ¶¶ 8, 34, 59; *see also* Prayer for Relief, ¶ D.)

24      19.     In actions where the plaintiff alleges violations of laws carrying statutory

25  penalties, numerous courts have held that where plaintiff pleads damages up to the statutory

26  maximum, defendants may meet CAFA's amount in controversy requirement by simply showing

27  that there are at least enough putative class claims that, when multiplied by the statutory

28  maximum, the amount in controversy equals more than $5,000,000. *See Korn*, 536 F. Supp. 2d at

4.

NOTICE OF REMOVAL OF ACTION
CASE NO.

1206 (holding that, where statute prescribed a $1,000 statutory maximum, defendants met CAFA's amount in controversy requirement by showing there were at least 5,001 putative class members); *accord Saulic v. Symantec Corp.*, No. SA CV 07-610 AHS (PLAx), 2007 WL 5074883, at *8 (C.D. Cal. Dec. 26, 2007); *Romeo v. The Home Depot*, No. 06CV1505 IEG (BLM), 2006 WL 6814428, at *2 (S.D. Cal. Oct. 30, 2006).

20.     As stated above, Plaintiff contends Time violated California Civil Code § 1798.83 by failing to make "Shine the Light" disclosures or provide customers with a means to obtain such disclosures with respect to each and every person who provided Time with personal identification information.   (Compl., at ¶¶ 6-8, 29-33); *see Muniz*, 2007 WL 1302504, at *4 (permitting a defendant to utilize a 100% violation rate when calculating amount in controversy since "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%" and plaintiff "is the master of [his] claims, and if [he] wanted to avoid removal, [he] could have alleged facts specific to [his] claims which would narrow the scope of the putative class or the damages sought. . . .") (internal alterations and quotation marks omitted).

21.     Plaintiff further alleges the class "consist[s] of millions of individuals." (*Id.*, at ¶ 40.)

22.     Without conceding liability, appropriateness of class treatment, appropriateness of Plaintiff's class definition, or the validity of Plaintiff's claim for relief, if the allegations in Plaintiff's Complaint are accepted as true, there were far in excess of 1,667 proposed class members in the State of California during the proposed class period. (*Id.*, at ¶ 40); *see Phillips*, 2010 WL 4877718, at *2 (relying on the allegation in plaintiff's complaint that "the proposed class will exceed 20,000 policyholders and group members" to support a finding of jurisdiction under CAFA). Thus, the amount alleged by Plaintiff to be "in controversy" in this action exceeds CAFA's $5 million requirement because 1,667 putative class members multiplied by the statutory maximum of $3,000 requested by Plaintiff per violation equals $5,001,000. *See Korn*, 536 F. Supp. 2d at 1206; *Saulic*, 2007 WL 5074883, at *8; *Romeo*, 2006 WL 6814428, at *2.

NOTICE OF REMOVAL OF ACTION
CASE No.

23.     The amount in controversy exceeds $5 million dollars even using the $500 dollar statutory maximum for non-willful violations of Cal. Civ. Code § 1798.83. Plaintiff alleges the putative class consists of "millions" of individuals, (Compl., ¶ 40), which suggests there are at least two million class members.[1] However, even multiplying $500 by only one million putative class members results in an amount in controversy that far exceeds $5,000,000.

24.     Moreover, under CAFA, the potential cost of an attorneys' fee award should also be considered when calculating the amount in controversy. *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) ("We have held that attorneys' fees were properly included in the amount in controversy in a class action."); *Yeroushalmi v. Blockbuster, Inc.*, No. CV 05-225-AHM (RCX), 2005 WL 2083008, at *3, *5 & n.4 (C.D. Cal. July 11, 2005) (holding that under CAFA, the amount put in controversy includes the potential fee award); *see also Tompkins v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, *4 (E.D. Cal. Apr. 22, 2008) (including 25% of the common fund for attorneys' fees when calculating amount in controversy).

25.     Here, Plaintiff also contends he is entitled to attorneys' fees. (Compl., ¶ 65; Prayer for Relief, ¶ E.)

26.     Without conceding liability or the appropriateness of Plaintiff's request for attorneys' fees, such fees could also potentially be significant because this is a putative statewide class action with, according to Plaintiff, a class that "consist[s] of millions of individuals." (*Id.*, at ¶ 40.) Plaintiff's request for attorneys' fees further takes the amount in controversy far beyond the statutory threshold. *See* 28 U.S.C. § 1332(d)(2).

### THE PARTIES ARE CITIZENS OF DIFFERENT STATES

27.     Plaintiff alleges he is "domiciled in the State of California. (Compl., ¶ 9.)

28.     Plaintiff admits that Time is a Delaware corporation, and its principal place of business is in New York. (*Id.*, ¶ 10); *see Korn*, 536 F. Supp. 2d at 1203 ("[P]laintiff alleges in his complaint that defendant is a Delaware corporation with its principal place of business in New

---

[1] The plural form of a word denotes more than one number. *See* NEW OXFORD AMERICAN DICTIONARY 1346 (3d ed. 2010).

6.

NOTICE OF REMOVAL OF ACTION
CASE NO.

Jersey. . . . A statement in a complaint is a judicial admission. . . . Plaintiff is bound by the allegations in his complaint that assert defendant's citizenship, for purposes of diversity jurisdiction, is in Delaware and New Jersey.").

29.     Plaintiff and all purported putative class members are citizens of California and not citizens of New York, where Time is a citizen.  (*Id.*, ¶¶ 9, 39.)  Consequently, minimum diversity is satisfied under 28 U.S.C. § 1332(d)(2)(A).

## VENUE IS PROPER

30.     Removal to this judicial district and division is proper under 28 U.S.C. §§ 1441(a) and 1446(a) because the state court action was originally pending in this judicial district— namely, the Superior Court of the State of California for the County of San Francisco.

## NOTICE TO THE SUPERIOR COURT OF SAN FRANCISCO COUNTY

31.     Contemporaneously with the filing of this Notice of Removal, Time is filing a true and correct copy of this Notice of Removal and all documents filed in support thereof and concurrently therewith with the clerk of the Superior Court of the State of California for the County of San Francisco, under 28 U.S.C. § 1446(d).

Dated: January 26, 2012

COOLEY LLP
MICHAEL G. RHODES (116127)
MICHELLE C. DOOLIN (179445)
DARCIE A. TILLY (239715)
ERIN E. GOODSELL (262967)


_____
                    Darcie A. Tilly

Attorneys for Defendant
TIME INC.

NOTICE OF REMOVAL OF ACTION
CASE NO.

EXHIBIT A

12/30/11   6AW

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TIME, INC., a Delaware corporation,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

NICHOLAS MURRAY, individually and on behalf of all others
similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  San Francisco Superior Court

**CASE NUMBER:**
*(Número del Caso):*  CGC - 11 - 516868

400 McAllister Street
San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean P. Reis, Edelson McGuire LLP, 30021 Tomas Street, Suite 300, RSM, CA 92688  (949) 459-2124

DATE:  **DEC 2 2 2011**   CLERK OF THE COURT   Clerk, by  ROSSALY DELAVEGA NAVARRO  , Deputy
*(Fecha):*                                      *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):*  Time, Inc, a Delaware corporation
    under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

EXHIBIT B

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Counsel for Plaintiff and the Putative Class*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

| | | |
|---|---|---|
| NICHOLAS MURRAY, individually and on behalf of all others similarly situated, | ) ) ) | Case No. **CGC - 11 - 516968** |
| Plaintiff, | ) ) ) | **COMPLAINT FOR:** |
| v. | ) ) ) | **(1)** **Violations of Cal. Civ. Code § 1798.83** |
| TIME, INC., a Delaware corporation, | ) ) ) | **(2)** **Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq.* |
| Defendant. | ) ) ) | ~~**DEMAND FOR JURY TRIAL**~~ |
| | ) ) | **CLASS ACTION** |

FILED
Superior Court of California
County of San Francisco
DEC 23 2011
CLERK OF THE COURT
BY: _____
Deputy Clerk

CLASS ACTION COMPLAINT

Plaintiff, Nicholas Murray ("Plaintiff"), by and through his attorneys, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, complains and alleges as follows:

### NATURE OF THE ACTION

1.  In 2003, the California Legislature passed the Shine the Light Law, Cal. Civ. Code § 1798.83 (the "Shine the Light Law" or the "Act"), to protect consumers from companies that collect and surreptitiously share their sensitive personal information with third parties. In support of the bill, its author, Senator Liz Figueroa, aptly commented:

> [s]ecret direct marketing "profiles" of consumers are being exchanged every hour invisibly and routinely by the companies with which they do business. Not only are consumers powerless to stop such invasions of privacy, they do not even know whether and to what extent it is taking place.[1]

2.  The Act empowers consumers to "shine the light" on companies' data sharing methods by requiring businesses to establish a procedure by which customers can receive an explanation of how their personal information is disclosed to third parties (the "Shine the Light Disclosures" or "Disclosures").

3.  Businesses governed by the Act are required to: (1) designate a dedicated mailing address (physical or electronic) or phone/facsimile number where customers can request the company's Shine the Light Disclosures, and (2) ensure that interested customers can readily make such requests or otherwise obtain the Disclosures.

4.  Shine the Light Disclosures are necessary because without knowledge of companies' data sharing practices it would be virtually impossible for privacy concerned consumers to make informed decisions about which businesses they should entrust with their personal information:

---

[1]   CALIFORNIA SENATE JUDICIARY COMMITTEE, SB 27 BILL ANALYSIS, Sept. 16, 2003, *available at* http://info.sen.ca.gov/pub/03-04/bill/sen/sb_0001-0050/sb_27_cfa_20030916_115403_sen_comm.html (last visited December 19, 2011).

CLASS ACTION COMPLAINT

2

Because privacy is, by definition, so intensely personal, for a consumer to make a rational and informed and personal choice to opt-in, opt-out, or simply take their business elsewhere, the consumer must know the "who, what, where and when" of how a business handles personal information.[2]

5.     While traditional businesses may display or otherwise make Shine the Light Disclosures available at their physical storefront locations, the Act requires companies with no "brick and mortar" locations to either provide the Shine the Light Disclosures on their websites.

6.     Defendant Time, Inc. ("Time")—a media company with no "brick and mortar" storefront locations in California—owns and operates various Internet websites and magazine publications. Time collects and stores a wealth of information about its users, and shares such data with third parties for direct marketing purposes.

7.     Despite the fact that Time profits by sharing its users' personal information, it intentionally keeps its users in the dark on its information sharing practices by failing to make the Shine the Light Disclosures on its website.

8.     As a result, Time violates the Shine the Light Law by willfully denying its users an opportunity to exercise their legally proscribed rights under the Act. Therefore, Plaintiff and the Class are entitled to civil penalties of three thousand dollars ($3,000.00) per violation pursuant to California Civil Code section 1798.84(c).

**PARTIES**

9.     Plaintiff Nicholas Murray is a natural person domiciled in the State of California.

10.     Defendant, Time, Inc., is a Delaware corporation with its principal place of business at 1271 Avenue of the Americas, in the City of New York, State of New York. Time does business throughout California and the United States.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.

---

[2]     *Supra,* note 1, pp. 4-5.

12.     This Court has personal jurisdiction over Time because the improper conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

13.     Venue is proper in this Court because a substantial part of Time's conduct at issue originated and/or occurred in this County and because Plaintiff resides in this County.

## FACTUAL BACKGROUND

I.    **The Personal Information Market: Consumer Data Has Monetary Value**

14.     In 2001, Federal Trade Commission ("FTC") Commissioner Orson Swindle recognized that "the digital revolution ... has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life ... [and] individuals are concerned about being defined by the existing data on themselves."[3]

15.     More than a decade later, Commissioner Swindle's comments ring truer than ever, as consumer data feeds an information marketplace that supports a $26 billion dollar per year online advertising industry in the United States.[4]

16.     The FTC has also recognized that consumer data possesses inherent monetary value within the new information marketplace:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable. *Data is currency. The larger the data set, the greater potential for analysis—and profit.*[5]

17.     In today's digital marketplace, consumers engage in *quid pro quo* transactions with online businesses whereby individuals exchange personal information for services.

---

[3]     The Information Marketplace, Merging and Exchanging Consumer Data, http://www.ftc.gov/bcp/workshops/infomktplace/transcript.htm (last visited December 19, 2011).

[4]     *See*, Web's Hot New Commodity: Privacy, http://online.wsj.com/article/SB10001424052748703529004576160764037920274.html (last visited December 19, 2011).

[5]     Statement of FTC Commissioner Pamela Jones Harbour, http://www.ftc.gov/speeches/harbour/091207privacyroundtable.pdf (last visited December 19, 2011) (emphasis added).

18.     It is now a nearly ubiquitous practice for online companies that collect consumer information—such as, names, addresses, occupations, political and religious affiliations, sexual orientation, education, and cultural interests—to share such data, for a profit, with numerous third party marketers without any input from, or disclosure to, the source consumer.

19.     In fact, consumers' personal information has become such a valuable commodity that companies now offer individuals the opportunity to sell their personal information themselves.[6] In this way, consumers are becoming more empowered to direct where their personal information is shared, and to directly profit from their own data.

20.     Because Time deprives its users the ability to control the dissemination of their personal information—by denying them the ability to ascertain where such data is flowing—Time has diluted the value of its users' property as it exists in the personal information market.

## II.     California's Shine the Light Law

21.     The Shine the Light Law was enacted because while "transparency is the touchstone of consumer confidence in information handling … by and large, consumers are not aware of the extent to which their personal information is sold."[7] Thus, the Act is designed to "shine the light" on how businesses share and profit from their customers' personal information.

22.     As such, under the Act, customers may request, and companies doing business in California must provide, a list of all categories of personal information disclosed by the business within the preceding year, as well as the names and addresses of the companies receiving that information. Cal. Civ. Code § 1798.83(a).

23.     To facilitate such requests, the Act requires businesses to "designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or

---

[6]   "You Want My Personal Data? Reward Me for It," http://www.nytimes.com/2010/07/18/business/18unboxed.html (last visited December 19, 2011).

[7]   *See;* CALIFORNIA SENATE JUDICIARY COMMITTEE, SB 27 BILL ANALYSIS, Sept. 16, 2003, *available at* http://info.sen.ca.gov/pub/03-04/bill/sen/sb_0001-0050/sb_27_cfa_20030916_115403_sen_comm.html (last visited December 19, 2011).

CLASS ACTION COMPLAINT

5

1   facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests" to

2   discover how their personal information is being shared with third parties. Cal. Civ. Code §

3   1798.83(b)(1).

4         24.    The term "personal information" is broadly defined under the Act, and includes,

5   but is not limited to, an individual's:

6           (A) name and address; (B) electronic mail address; (C) age or date of
        birth; (D) names of children; (E) electronic mail or other addresses of

7           children; (F) number of children; (G) age or gender of children; (H)
        height; (I) weight; (J) race; (K) religion; (L) occupation; (M) telephone

8           number; (N) education; (O) political party affiliation; (P) medical
        condition; (Q) drugs, therapies, or medical products or equipment used;

9           (R) the kind of product the customer purchased, leased, or rented; (S) real
        property purchased, leased, or rented; (T) the kind of service provided; (U)

10          social security number; (V) bank account number; (W) credit card
        number; (X) debit card number; (Y) bank or investment account, debit

11          card, or credit card balance; (Z) payment history; and (AA) information
        pertaining to the customer's creditworthiness, assets, income, or liabilities.

12

13  Cal. Civ. Code § 1798.83(e)(7).

14        25.    An Internet business with no "brick and mortar" locations may comply with the

15  Act by adhering to the following provision:

16          Add to the home page of its Web site a link either to a page titled "Your
        Privacy Rights" or add the words "Your Privacy Rights" to the home

17          page's link to the business's privacy policy … The first page of the link
        shall describe a customer's rights pursuant to this section and shall provide

18          the designated mailing address, e-mail address, as required, or toll-free
        telephone number or facsimile number, as appropriate.

19

20  Cal. Civ. Code § 1798.83(b)(1)(B).

21        26.    Alternatively, and in cases where an Internet business has "employees who

22  regularly have contact with customers," a business may:

23          Notify all agents and managers who directly supervise employees who
        regularly have contact with customers of the designated address or

24          numbers or the means to obtain those addresses or numbers and instruct
        those employees that customers who inquire about the business's privacy

25          practices or the business's compliance with this section shall be informed
        of the designated addresses or numbers or the means to obtain the

26          addresses or numbers.

27  Cal. Civ. Code § 1798.83(b)(1)(A).

28

CLASS ACTION COMPLAINT

27.     In short, the Act affords California citizens the right to discover whether businesses are sharing their personal information, and if so, which companies or organizations they are sharing such data with.

**III.     A Brief Overview of Time**

28.     With over 115 magazines, Time is the self-professed "largest magazine media company in the US."[8] Time publishes magazines for circulation and also operates websites for its magazines, including, TIME, Life, People, and Sports Illustrated.

29.     In order to subscribe to one of its magazines and/or websites, consumers are required to provide Time with certain personal information, including, *inter alia*, their full names, mailing addresses, e-mail addresses, telephone numbers, genders, dates of birth, and credit card or debit card numbers.

30.     Time maintains this data on its servers.

**IV.     Time Willfully Violates California's Shine the Light Law**

31.     Time shares its subscribers' personal information, including their names, addresses, e-mail addresses, gender, and dates of birth to third party direct marketing companies for direct marketing purposes.

32.     Despite the fact that Time shares information about its users with third parties for direct marketing purposes, it fails to provide its customers with the Shine the Light Disclosures, or the means through which its customers may obtain the Disclosures, as required by the Act.

33.     As such, Time has chosen to deny California customers their legal right to learn what personal information is being disclosed, and who is receiving it.

34.     Accordingly, Time intentionally violates California's Shine the Light Law and is liable for civil penalties of three thousand dollars ($3,000.00) per violation pursuant to Cal. Civ. Code § 1798.84(c).

---

[8]     Time "About Us," http://www.timeinc.com/aboutus/ (last visited December 19, 2011).

CLASS ACTION COMPLAINT

7

## FACTS RELATING TO PLAINTIFF NICHOLAS MURRAY

35. Plaintiff Nicholas Murray is a natural person domiciled in the State of California.

36. In or about 2008, Plaintiff signed up for a subscription to TIME magazine—a magazine owned, operated, and published by Time.

37. At the time that Plaintiff signed up for his subscription, he provided personal information to Time, including, *inter alia*, his full name, mailing address, e-mail address, ZIP code, telephone number, gender, birth date, and credit card information.

38. At all relevant times, Plaintiff used Time primarily for personal, family, and household purposes.

## CLASS ALLEGATIONS

39. **Definition of the Class:** Plaintiff Nicholas Murray brings this action pursuant to California Code of Civil Procedure § 382 on behalf of himself and a Class of similarly situated individuals, defined as follows:

All California residents who have provided personal information to Time.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person, and (5) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendant.

40. **Numerosity:** The exact number of the members of the Class is unknown and is not available to Plaintiff, but the Class is believed to consist of millions of individuals. Thus, individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records.

CLASS ACTION COMPLAINT

8

41.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

      (a)     Whether the Class members are "customers" of Defendant, as that term is defined by Cal. Civ. Code § 1798.83(e)(1);

      (b)     Whether each Class member had an "established business relationship" with Defendant, as that term is defined by Cal. Civ. Code § 1798.83(e)(5);

      (c)     Whether Defendant made the Shine the Light Disclosures required by Cal. Civ. Code § 1798.83(b)(1)(B);

      (d)     Whether Defendant has employees who regularly have contact with customers, as defined by Cal. Civ. Code § 1798.83(e)(4);

      (e)     Whether Defendant otherwise complied with the requirements of Cal. Civ. Code § 1798.83(b)(1);

      (f)     Whether Defendant's failure to meet the notice requirements of § 1798.83(b)(1)(B) constitutes a violation of § 1798.83;

      (g)     Whether Defendant's conduct constituted a willful, intentional, or reckless violation of § 1798.83; and

      (h)     Whether Plaintiff and the Class are entitled to injunctive relief.

42.     **Typicality:** The factual and legal bases of Time's liability to Plaintiff and to the other members of the Class are the same and resulted in injury to Plaintiff and all of the other members of the Class. Plaintiff and the other members of the Class have all suffered harm as a result of Time's wrongful conduct.

43.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class members, and have retained counsel competent and experienced

CLASS ACTION COMPLAINT

1   in complex class actions. Plaintiff has no interest antagonistic to those of the Class and

2   Defendant has no defenses unique to Plaintiff.

3      44.   **Appropriateness:** This class action is appropriate for certification because class

4   proceedings are superior to all other available methods for the fair and efficient adjudication of

5   this controversy and joinder of all members of the Class is impracticable. The damages suffered

6   by the individual members of the Class will likely be small relative to the burden and expense of

7   individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct.

8   Thus, it would be virtually impossible for the individual members of the Class to obtain effective

9   relief for Defendant's misconduct. Even if each member of the Class could sustain such

10  individual litigation, it would not be preferable to a class action because individual litigation

11  would increase the delay and expenses to all parties due to the complex legal and factual

12  controversies presented in this Complaint. By contrast, a class action presents far fewer

13  management difficulties and provides the benefits of single adjudication, economy of scale, and

14  comprehensive supervision by a single court. Economies of time, effort, and expense will be

15  fostered and uniformity of decisions will be ensured.

16     45.   **Policies Generally Applicable to the Class:** This class action is also appropriate

17  for certification because Defendant has acted or refused to act on grounds generally applicable to

18  the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief

19  with respect to the Class as a whole. The policies of the Defendant challenged herein apply to

20  and affect all members of the Class uniformly, and Plaintiff's challenge of these policies hinges

21  on Defendant's conduct, not on facts or law applicable only to Plaintiff.

## FIRST CAUSE OF ACTION
### Violations of California's Shine the Light Law
### (Cal. Civ. Code § 1798.83)
### (On behalf of Plaintiff and the Class)

25     46.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

26     47.   Plaintiff and the Class are "customers" of Time as that term is defined by Cal.

27  Civ. Code § 1798.83(e)(1).

28

CLASS ACTION COMPLAINT

10

48.     Plaintiff and the Class are engaged in an ongoing "established business relationship" with Time as that term is defined by Cal. Civ. Code § 1798.83(e)(5).

49.     Time cannot utilize the notice option available under Cal. Civ. Code § 1798.83(b)(1)(A) because, as a business operating almost exclusively online, it does not have "employees who regularly have contact with customers," as that term is defined by Cal. Civ. Code § 1798.83(e)(4).

50.     In any event, and upon information and belief, Time does not instruct or otherwise train its employees to respond to customer inquiries about obtaining Time's Shine the Light Disclosures as required by Cal. Civ. Code § 1798.83(b)(1)(A).

51.     Further, and because Time does not conduct business at "brick and mortar" stores, it cannot utilize the notice option available under Cal. Civ. Code § 1798.83(b)(1)(C).

52.     Consequently, Time must utilize the notice option under Cal. Civ. Code § 1798.83(b)(1)(B). As such, Time must affirmatively disclose specific information to its customers through its Web site.

53.     Time willfully violates the Act by (i) failing to add a hyperlink entitled "Your Privacy Rights" to its home page, (ii) failing to add a hyperlink to a page titled "Your Privacy Rights," (iii) failing to designate a mailing address, e-mail address, telephone number, or facsimile number for customers to deliver requests, and (iv) failing to describe its California customers' rights under the Shine the Light Law. *See* Cal. Civ. Code § 1798.83(b)(1)(B). (A true and accurate copy of Time's home page and privacy policy is attached as Exhibits A and B, respectively.)

54.     Plaintiff's and the Class's personal information has monetary value, and Time's failure to comply with Cal. Civ. Code § 1798.83(b)(1) deprives Plaintiff and the Class of their statutorily-guaranteed right to monitor and control the disclosure and use of that data. As such, Time has diluted the value of Plaintiff's and the Class's personal property, and deprived them of the opportunity to sell their personal property for their own financial gain. Accordingly, Plaintiff

1   and the Class have sustained, and continue to sustain, monetary injuries as a direct and proximate

2   cause of Time's violation of Cal. Civ. Code § 1798.83.

3       55.   Time's failure to comply with Cal. Civ. Code § 1798.83(b) also deprives Plaintiff

4   and the Class of the ability to make informed decisions with respect to their privacy and

5   transmission of their personal information.

6       56.   At all times relevant to this lawsuit, Time has failed to provide Plaintiff or the

7   Class with disclosures required by Cal. Civ. Code § 1798.83(b)(1).

8       57.   Time is a "business required to comply with [Section 1798.83]." and none of the

9   exceptions in Sections 1798.83 or 1798.84 apply. *See* Cal. Civ. Code § 1798.83(b)(1).

10      58.   Time shares its customers' personal information with third parties for direct

11   marketing purposes.

12      59.   Accordingly, Plaintiff and the Class are entitled to civil penalties of three

13   thousand dollars ($3,000.00) per violation pursuant to California Civil Code section 1798.84(c).

14

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(On Behalf of Plaintiff and the Class)**

15

16

17      60.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

18      61.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

19   §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in

20   commercial markets for goods and services.

21      62.   The UCL prohibits any unlawful, unfair or fraudulent business act or practice.

22      63.   As discussed above, Time has violated the unlawful prong of the UCL in that its

23   conduct violated the Shine the Light Law, Cal. Civ. Code § 1798.83.

24      64.   Plaintiff's and the Class's personal information has monetary value, and Time's

25   failure to comply with Cal. Civ. Code § 1798.83(b) deprives Plaintiff and the Class of their

26   statutorily-guaranteed right to monitor and control the disclosure and use of that data. As such,

27

28

CLASS ACTION COMPLAINT
12

1   Time has diluted the value of Plaintiff's and the Class's personal property, and deprived them of

2   the opportunity to sell their personal property for their own financial gain.

3         65.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff, on his own behalf and on

4   behalf of the Class, seeks an order requiring Time to (1) immediately cease the unlawful

5   practices described herein; (2) make full restitution of all funds wrongfully obtained by sharing

6   and/or selling Plaintiff's and the Class's personal information; and (3) pay interest, attorneys'

7   fees, and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

8   **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiff Nicholas Murray, individually and on behalf of the Class, prays

10  for the following relief:

11      A.    Certify the Class as defined above, appoint Plaintiff as Class representative, and

12  designate his counsel as Class Counsel;

13      B.    Declare that Defendant's actions, as described herein, violate California's Shine

14  the Light Law, Cal. Civ. Code § 1798.83, and the Unfair Competition Law, Cal. Bus. & Prof.

15  Code §§ 17200, *et seq.*;

16      C.    Award injunctive and other equitable relief as is necessary to protect the interests

17  of the Class, including, *inter alia*, entering an Order: (i) prohibiting Defendant from engaging in

18  the wrongful and unlawful acts described herein; and (ii) requiring Defendant to add to its

19  website the information required by Cal. Civ. Code § 1798.83(b)(1)(B);

20      D.    Award damages, including civil penalties of three thousand dollars ($3,000.00)

21  per violation of Cal. Civ. Code § 1798.83 to Plaintiff and the Class;

22      E.    Award Plaintiff and the Class their reasonable litigation expenses and attorneys'

23  fees pursuant to Cal. Civ. Code § 1798.84(g) and Cal. Code Civ. Proc. § 1021.5;

24      F.    Award Plaintiff and the Class pre- and post-judgment interest, to the extent

25  allowable; and

26      G.    Award such other and further relief as equity and justice may require.

27

28

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Dated: December 22, 2011

Respectfully submitted,

**NICHOLAS MURRAY**, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

By: _____
One of Plaintiff's attorneys

SEAN P. REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

* Pro hac vice admission to be sought.

# **EXHIBIT A**

pdfcrowd.com



HOME

NewsFeed | U.S. | Politics | World | Business | Money | Tech | Health | Science | Entertainment | Opinion

The Top 10 Worst
Christmas Movies

In Memory of
Photographers We
Lost in 2011

*Star Wars* on Earth: A
Galaxy Very, Very
Close

The Science of Animal
Democracy:
Americans Vote with
the Fishes

# TIME

Get HTML ACCESS

Tuesday, December 20, 2011



KRT / REUTERS

# A New North Korea: Could Kim
# Jong Un Liberate His Nation's
# Economy?

When it comes to the nation's next leader, there is more for hope in a young man

TOYOTA    SEARCH TIME.COM

## Latest Headlines
UPDATED 5:05 PM ET

- U.S. Commander from Iraq Arrives Home
- Bankers Among 5 Dead in N.J. Plane Crash
- Ohio State Hit With One-Year Bowl Ban
- U.S. Housing Starts Up, Despite Low Levels
- Trade Group: Holiday Flying Falls Slightly
- Deadly Storm Halts Travel Across Plains
- Turkey Detains 40 for Alleged Rebel Links
- Sunni Iraq VP Denies Running Hit Squads
- 'Tis the Season for Christmas Tree Syndrome
- The Food Network's Oddest Holiday Recipes
- Prince Harry Helps Rescue Mugged Friend
- What's Next For T-Mobile After Merger Fail?
- CNN: Man Guilty of Killing UNC Student
- CNNMoney: Dow Jones Soars 300 Points
- Vaclav Havel: 1936–2011

Open in PDF in PROVIDED BY PRO VERSION   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com



the power of positive

**Amway™**

A GLOBAL OPPORTUNITY

Subscribe to TIME and get ALL ACCESS

## Quotes of the Day »



*"We want to emerge from this crisis and build a safe, modern Syria — a Syria that will be a model of democracy."*

WALID MUALLEM, Syrian Foreign Minister, after signing an Arab League protocol that will deploy observers in Syria; the country had wavered on whether to agree to the observers, prompting the Arab League to impose economic sanctions

More Quotes »

---

When it comes to the nation's next leader, there is cause for hope, as a young man, Kim lived in Europe under an assumed name and saw how affluent the West is Full Story »

- After the Mourning, Korean Reunification?
- Will Kim Jong Il Become the World's Latest Embalmed Leader?
- My Eerie, Sad Trip into North Korea
- Kim Jong Il: A Life Shrouded in Myth, Mystery, Mayhem
- Photos: Mourning the Dear Leader 📷

- Why Beijing Maintains Its Friendship with North Korea
- Kim Jong Un Visits Father's Body; North Korea Media Hails New Leader
- Inside the Kim Family Tree
- 10 Things You Don't Know About Kim Jong Un
- The Iconography of Kim Jong Il 📷

## Must Reads

**MOVIE REVIEW »**
Fincher's *Girl with the Dragon Tattoo*: Thanks but No Thanks
BY RICHARD CORLISS

**TECHNOLOGY »**
HTC Android Phones Will Get a Bit Worse After Apple Patent Win
BY JARED NEWMAN

**HEALTH »**
Truth Hurts: Patients Want to See Their Doctors' Notes
BY ALICE PARK

**MONEY »**  The 5 Most Surprising Findings from the 2010 Census
BY JOSH SANBURN

**OPINION »**
Be Kind to the Holiday Card—Impaired
BY RUTH DAVIS KONIGSBERG

**POLITICS »**

PolitiFact's Semantic Distinction of the Year: Ending Medicare
BY ADAM SORENSEN

---

## Inside TIME.com

GET HTML BROWSER: PRO VERSION   Are you a developer? Try out the HTML to PDF API

# Inside TIME.com

| MONEY | ESSAYS | TRENDING | POLITICS |
|---|---|---|---|

**MONEY**

Experts: Nothing Crazy About Giving Christmas Gifts to Pets

Lead by Example? Hardly — Boomer Kids Outsave Their Parents

Saudi Prince Invests $300 Million in Twitter

**ESSAYS**

Gimme Some Truth for Xmas

Why E-Reading with Your Kid Can Impede Learning

Should You Be Allowed to Sell Your Bone Marrow?

**TRENDING**

Why Hanukkah Is the Most Celebrated Jewish Holiday in America

Family Ties: Romney and Bush Are Distant Cousins

Prince Harry Rides to the Rescue of Mugged Friend

**POLITICS**

Newt's Rise and Fall: A Lesson in Republican Frustration

House Revolt on Payroll-Tax Cut Throws Congress into Familiar Late-December Chaos

Barney Frank Looks like He's Enjoying Retirement

## Multimedia

Videos | Photos          More Videos »

### Your System Status

**WE'RE SORRY!**
You need to update your Flash player.

Get ADOBE®
FLASH PLAYER

IMPORTANT: After installing the required upgrade please reload this browser window to view the video player.

This content requires the Adobe Flash Player. Get Flash



The comm... is No Defense

OPEN BROWSER PRO VERSION

Sponsored Links



## TIME Person *of the* Year

### The Protester

**GOING GREEN »**
Winning the Conservation War: How to Manage the World We're Stuck With
BY BRYAN WALSH

**ECONOMY »**
Why Europe's Backdoor Bailouts Won't Work
BY RANA FOROOHAR

**WORLD »**
Syrian Regime Agrees to Arab Monitoring, but

Are you a developer? Try out the HTML to PDF API

## Introducing LightBox

A New Blog from the Photo Editors of TIME

COVERS FINDER

### Most Popular »                Full List »

MOST READ    MOST EMAILED

1. Person of the Year 2011
2. 14 Days Till Iowa: Newt Crushed
3. Kim Jong Un: 10 Things You Might Not Know About North Korea's New Leader
4. The Top 10 Everything of 2011
5. 10 Buzzwords to Take Off Your LinkedIn Profile Now
6. Kim Jong Il: A Dictator's Passing
7. The Koreas: To Reunify or Not?
8. The Legal Case You've Been Waiting For? Mark Zuckerberg Vs. Mark Zuckerberg
9. After Kim Jong Il: A Look at the Kim Family Tree
10. Inside Kim Jong Il's Eerie Authoritarian World

### Current Issue »



Table of Contents

SUBSCRIBE
ALL ACCESS

### The Covers Archive: Middle East

Search the Covers Archive
Search

pdfcrowd.com


A Legacy of Innovation.

STEVE JOBS: THE BIOGRAPHY

FORTUNE

Available on newsstands now.

Click here to order on iTunes

 Opposition Unimpressed
BY RANA ABOUZED / GAMMARTH

WORLD » Iraq: Al-Maliki's Attack on Sunni Leaders Suggests a Dark, Divided Future
BY TONY KARON

KEEPING SCORE » NCAA Blunder: Changing North Dakota's Tribal Nickname
BY SEAN GREGORY

**Photos**



2011: Year of Mother Nature's Fury


 TIME.com 10 Questions

 TIME FORTUNE PRESENT
energy for tomorrow

Discover What Military Operatives & The Army Don't Want You To Know
www.CloseCombatTraining.com

**Gingrich in 2012?**
Would you support Newt Gingrich for president? Vote in poll.
www.newsmax.com/surveys

**Brides from Cuba**
1000s Women from Cuba and Latin America to Date & Marry.
AmoLatina.com

pdfcrowd.com







TIME GAME
CHANGERS
Sponsored by
Prudential

## More Inside Time.com

### U.S. »
- U.S. Housing Starts Up, Despite Low Levels
- Bankers Among 5 Dead in N.J. Plane Crash
- Accused White House Shooter to Stay Held

### POLITICS »
- Mitt Romney, Mr. Plurality
- A Day of Iowa Splintering
- PolitiFact's Semantic Distinction of the Year: Ending Medicare

### WORLD »
- A New North Korea: Could Kim Jong Un Liberate His Nation's Economy?
- The Koreas: Could Kim Jong Il's Death Lead to Reunification?
- In the Former Rebel Capital: Benghazi Protests Libya's New Regime

### BUSINESS »
- Trade Group: Holiday Flying Falls Slightly
- Why Europe's Back Door Bailouts Won't Work
- AT&T Agrees to Drop Bid for T-Mobile

### SCIENCE »
- Winning the Conservation War: How to Manage the World We're Stuck With
- America Votes with the Fishes
- The Silly Science of Newt Gingrich

### ENTERTAINMENT »
- James Blake Is As Crazy As Ever On His New EP
- Holiday Movie Warning: Descandants, Young Adult Are Not the Fun Family Escapes Advertised
- Margin Call Director J.C. Chandor on VOD and the Awards Season Hustle

### BLOGS »
- NewsFeed
- Global Spin
- Ecocentric
- Battleland
- Moneyland
- Curious Capitalist
- Techland
- The Page
- Swampland
- Tuned In
- Healthland
- Ideas

### PHOTOS »
- Kim Jong Il: A Dictator's Passing
- Vaclav Havel: 1936–2011
- Police and Protesters Clash in Cairo

### LIGHTBOX »
- Cool Cats and Tom Boys: Ken Russell's 'The Last of the Teddy Girls'
- In Memory of Photographers We Lost in 2011
- Kim Jong Il as First Among Equals

### BEST & WORST LISTS »
- Person of the Year 2011
- TIME's Gift Guides: Stylish Books
- The Top 10 Everything of 2011

### MAGAZINE »
- Person Of The Year: The Protester
- William McRaven: The Admiral
- Ai Weiwei: The Dissident

### TRAVEL »
- Capital Appreciation: Board a Bus for the Best Way to See Brasília
- High Times: Chill Out at the Summit of Ho Chi Minh City
- The Mild West: The Beauty of Remotest Brittany

### PEOPLE »
- 10 Questions for David Attenborough
- 10 Questions for Portuguese President Aníbal Cavaco Silva
- 10 Questions for John Ashbery

Stay Connected with TIME.com    Are you a developer? Try out the HTML to PDF API

Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

# **EXHIBIT B**



# TIME

# PRIVACY NOTICE

This is the Privacy Policy for the United States of America which applies to you if you live outside the European Union or Canada.

European Union Privacy Information
Canada Privacy Information

Thank you for visiting TIME, a site within the network of sites of Time Inc. and its subsidiaries, each of which have adopted this Privacy Notice. Your privacy is important to us. To better protect your privacy, we provide this notice explaining our information practices and the choices you can make about the way your information is collected and used by Time Inc. and its subsidiaries. Click here for a list of the sites of Time Inc. and its subsidiaries which are governed by this Privacy Notice.

## Table of Contents

- The Information We Collect
- How We Use the Information
- Collection of Information by Third-Party Sites and Sponsors
- Privacy Options
- Cookies
- Our Commitment to Security
- How You can Access or Correct Information
- Special Note for Parents
- Changes to this Notice
- How to Contact Us

## The Information We Collect

Through Time Inc. publications, websites and other media, you can order publications and products, and engage in various activities like entering contests or sweepstakes, playing games, taking quizzes, voting in polls or otherwise expressing an opinion, subscribing to one of our services, such as newsletters, or participating in one of our online forums or communities. Your personally identifiable information may be required to engage in these activities as well as to receive products and services that you may have requested. The types of personally identifiable information that may be collected at these pages and elsewhere include but are not limited to: name, address, gender, e-mail address, telephone number, fax number and credit or debit card information.

Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

We may also collect information about your personal or professional interests and use of or opinions about various products, programs and services. For instance, we may ask you to identify your job or industry to qualify you for free business magazines.

At some Time Inc. sites and through certain promotions, you can submit information about other people. For example, you might submit a person's name, mailing and/or e-mail address to send a gift or electronic greeting card. The types of personally identifiable information that may be collected about other people at these pages include: recipient's name, address, e-mail address and telephone number.

We may also collect certain non-personally identifiable information when you visit our web pages or use our applications, such as the type of browser and operating system you are using, your IP Address and your Internet service provider, and location-based information.

back to top

## How We Use the Information

We may use the information you provide about yourself or others to fulfill requests for our publications, products or services, to respond to inquiries about offerings and to offer other products, programs or services that may be of interest.

We may combine information we receive with outside records and share such information with third parties to enhance our ability to market to you those products or services that may be of interest to you.

We may disclose personally identifiable information to third parties whose practices are not covered by this privacy statement (e.g., other marketers, magazine publishers, retailers, participatory databases and non-profit organizations) that want to market products or services to you.

When you request a magazine, service or other product, we will forward the information you give us to the publisher or provider for fulfillment. They may contact you with special offers of possible interest.

We sometimes use this information to communicate with you, such as to notify you when you have won one of our contests or sweepstakes, or when we make changes to subscriber agreements, to fulfill a request by you for an online newsletter or to contact you about your account.

If you choose to submit content (e.g., a "letter to our editors" or an online review), we may publish your name, screen name and other information you have provided to us.

The information we collect in connection with our online forums and communities is used to provide an interactive experience. We use this information to facilitate participation in these online forums and communities and, from time to time, to offer you products, programs or services.

We sometimes use the non-personally identifiable information that we collect to improve the design and content of our

Are you a developer? Try out the HTML to PDF API

Are you a developer? Try out the HTML to PDF API

publications and websites, and to enable us to customize your Internet experience. We also may use this information to analyze site usage, as well as to offer you products, programs or services.

We will disclose information we maintain when required to do so by law, for example, in response to a court order or a subpoena. We also may disclose such information in response to a law enforcement agency's request.

Agents and contractors of Time Inc. that have access to personally identifiable information are required to protect this information in a manner that is consistent with this Privacy Notice by, for example, not using the information for any purpose other than to carry out the services they are performing for Time Inc.

We may transfer your personally identifiable information to other Time Inc. offices for internal management and administrative purposes. Your personal data will be transferred to other Time Inc. offices where necessary for the performance or conclusion of our contractual obligations to you or for your benefit. Transfers of personally identifiable information may also be made where necessary for the establishment, exercise or defense of legal claims.

Please note that if Time Inc. or any of its subsidiaries or lines of business is sold or otherwise disposed of, including through merger of, consolidation or sale of assets, the relevant customer database, including personally identifiable information we may possess about you, may, in whole or in part, be sold, disposed of, transferred or otherwise disclosed as part of that transaction.

Although we take appropriate measures to safeguard against unauthorized disclosures of information, we cannot assure you that personally identifiable information that we collect will never be disclosed in a manner that is inconsistent with this Privacy Notice. Inadvertent disclosures may result, for example, when third parties misrepresent their identities in asking the site for access to personally identifiable information about themselves for purposes of correcting possible factual errors in the data.

## Privacy Options

If you prefer not to receive traditional mail or other offline promotions from this or any other Time Inc. property or any companies not owned by Time Inc., please click here.

If you prefer not to receive e-mail marketing from this or any other Time Inc. property or any companies not owned by Time Inc., please click here.

Time Inc. sites will not use or transfer personally identifiable information provided to us in ways unrelated to the ones described above without also providing you with an opportunity to opt out of these unrelated uses.

## Collection of Information by Third-Party Sites and Sponsors

back to top

pdfcrowd.com

Some of our sites contain links to other sites whose information practices may be different than ours. You should consult the other sites' privacy notices, as we have no control over information that is submitted to, or collected by, these third parties.

Time Inc. sites sometimes may offer contests, sweepstakes, promotions, editorial features or other activities or offerings that are sponsored or co-sponsored by or presented with identified third parties. By virtue of your participation in such activities or offerings, your IP Address and the personally identifiable information that you voluntarily submit may be provided to both the Time Inc. site and the third parties. Time Inc. has no control over the third parties' use of this information.

Time Inc. sites may use reputable third parties to present or serve advertisements, including online behavioral advertisements, that you may see on the web pages and to conduct research about the advertisements. This privacy notice does not cover any use of information that such third parties may have collected from you (e.g., type of browser, operating system, domain name, day and time of visit, page(s) visited) or the methods used by the third-parties to collect that information (e.g., cookies, web beacons and clear gifs). For more information on the use of such third-parties, please click here.

## Cookies

To enhance your online experience we use cookies. Cookies are text files we place in your computer's browser to store your preferences. Cookies, by themselves, do not tell us your e-mail address or other personally identifiable information unless you choose to provide this information to us by, for example, registering at one of our sites. However, once you choose to furnish the site with personally identifiable information, this information may be linked to the data stored in the cookie.

We use cookies to understand Internet usage and to improve our content, offerings and advertisements. For example, we may use cookies to personalize your experience at our web pages (e.g., to recognize you by name when you return to our site), save your password in password-protected areas and enable you to use shopping carts on our sites. We also may use cookies to offer you products, programs or services. Similarly, as part of an arrangement with our business partners (including, those who present or serve the advertisements that you see on our web pages) we may also access cookies placed by others and allow others to access certain cookies placed by us.

We may also use small pieces of code such as "web beacons" or "clear gifs" to collect anonymous and aggregate advertising metrics, such as counting page views, promotion views or advertising responses. These "web beacons" may be used to deliver cookies that conform to our cookie policy. For more information regarding cookies, please click here.

back to top

## Our Commitment to Security

We have put in place appropriate physical, electronic and managerial procedures to safeguard and help prevent unauthorized access, maintain data security and correctly use the information we collect.

## How You can Access or Correct Information

Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

To inquire about personally identifiable information that this Time Inc. site has collected about you, or how to correct factual errors in such information, please email us by clicking here.

**Special Note for Parents**

The site you are visiting is one of the Time Inc. general audience sites and is not intended for use by children. For more information about our online privacy practices for children's sites, consult the privacy notice at the children's site in which you are interested.

**Changes to this Notice** This Notice may be changed by Time Inc. The revised Notice will be posted to this page so that you are aware of the information we collect, how we use it and under what circumstances we may disclose it.

**How to Contact Us**

If you have any questions or concerns about the Time Inc. Privacy Notice or its implementation please contact us via email by clicking here or at the following address:

Time Customer Service
Attention: Consumer Affairs
3000 University Center Drive
Tampa, Florida 33612-6408

http://www.time.com/

This Privacy Notice was revised 1/20/2011.

back
to top

Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

EXHIBIT C



ENDORSED
F I L E D
San Francisco County Superior Court

DEC 28 2011

CLERK OF THE COURT
BY: ___CAROLYN BALISTRERI___
Deputy Clerk

1   SEAN REIS (sreis@edelson.com) - SBN 184044
    EDELSON McGUIRE, LLP
2   30021 Tomas Street, Suite 300
    Rancho Santa Margarita, California 92688
3   Tel: (949) 459-2124
    Fax: (949) 459-2123
4

5   *Counsel for Plaintiff and the Putative Class*

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                      COUNTY OF SAN FRANCISCO

8
    NICHOLAS MURRAY, individually and    )
9   on behalf of all others similarly situated,   )   Case No.  CGC-11-516868
                                         )
10            Plaintiff,                  )
                                         )
11   v.                                   )   **PLAINTIFF NICHOLAS MURRAY'S MOTION**
                                         )   **AND MEMORANDUM OF LAW IN SUPPORT**
12  TIME, INC., a Delaware corporation,  )   **OF CLASS CERTIFICATION**
                                         )
13            Defendant.                  )   Date:  March 14, 2012
                                         )   Time:  9:30 a.m.
14                                        )   Dept:  302 (Hon. Harold E. Kahn)
                                         )
15                                        )

16

17

18

19

20

21

22

23

24

25

26

27

28   Plaintiff's Motion and Memorandum
     of Law in Support of Class Certification



1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2  **PLEASE TAKE NOTICE** that on March 14, 2012, at 9:30 a.m., or as soon thereafter as

3  this matter may be heard in Department 302 of the above entitled court, Plaintiff Nicholas

4  Murray will appear, through counsel, before the Honorable Harold E. Kahn, and then and there

5  move the Court, pursuant to Cal. Civ. Code § 382, for an Order certifying a class of individuals

6  defined as follows:

7      All California residents who have provided personal information to Time, Inc.[1]

8      The proposed class meets each of Section 382's prerequisites for certification. The class

9  is easily ascertainable and its members are so numerous that joinder would be impractical. There

10 are questions of law and fact common to each of the class members' claims, and those questions

11 predominate over any individual issues. Moreover, Plaintiff's claims are typical of those of the

12 classes and he and his counsel have and will continue to fairly and adequately represent the

13 interests of the absent class members. Accordingly, for these reasons and as discussed more fully

14 in Plaintiff's contemporaneously filed Memorandum in Support of Motion for Class

15 Certification, certification of the proposed class is appropriate.

16     WHEREFORE, Plaintiff Nicholas Murray, individually and on behalf of all others

17 similarly situated, respectfully requests that the Court grant the instant motion and enter an Order

18 (i) certifying the proposed class as defined herein; (ii) appointing Plaintiff class representative

19 and his counsel Class Counsel; (iii) requiring that notice of the certification be disseminated to

20 all putative class members; (iv) providing leave to conduct any necessary and appropriate

21 discovery relating to any class certification issues, and (v) providing such other and further relief

22 as the Court deems equitable and just.

23

24

25

26  [1]    Plaintiff anticipates the potential need to revise the class definition following the
conclusion of discovery relating to class certification issues.

27

28  Plaintiff's Motion and Memorandum                    ii
    of Law in Support of Class Certification

Dated: December 27, 2011

NICHOLAS MURRAY, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

By: /s/ Sean Reis
One of Plaintiff's Attorneys

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Attorneys for Plaintiff and the putative class*

## TABLE OF CONTENTS

I.    INTRODUCTION................................................................1

II.   FACTUAL BACKGROUND.................................................2

      A.    Facts Applicable to All putative Class Members .............................2

      B.    Facts Applicable to Plaintiff Nicholas Murray ...............................2

III.  THE PROPOSED CLASS IS BOTH ASCERTAINABLE AND HAS A
      WELL-DEFINED COMMUNITY OF INTEREST AMONG THE CLASS
      MEMBERS........................................................................3

      A.    The Proposed Class is Readily Ascertainable and So Numerous That
            Individual Joinder Would Be Impracticable.................................4

            i.    The Class Is Ascertainable........................................4

            ii.   The Class Is So Numerous that Joinder of Each Individual Member
                  Would be Impracticable...........................................5

      B.    There Is A Sufficient Community of Interest to Justify Class
            Treatment of the Claims at Issue in This Case............................6

            i.    Common Questions of Law and Fact Predominate ...................6

            ii.   Plaintiff's Claims Are Typical of the Claims of the Other Members
                  of the Class.....................................................8

            iii.  Plaintiff and His Counsel Have and Will Continue to Adequately
                  Represent the Interests of the Proposed Class.....................9

      C.    Class Treatment is the Superior Method for Adjudication of the
            Claims at Issue in this Case............................................10

IV.   CONCLUSION....................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

*California Cases Cited*

*Aguiar v. Cintas Corp. No. 2*, 50 Cal. Rptr. 3d 135 (Ct. App. 2006) ............................................4

*Ali v. U.S.A. Cab Ltd.*, 98 Cal. Rptr. 3d 568 (Ct. App. 2009)......................................................7, 10

*Basurco v. 21st Century Ins. Co.*, 133 Cal. Rptr. 2d 367 (Ct. App. 2003) ..............................6

*Brown v. Regents of University of California*, 198 Cal. Rptr. 916 (Ct. App. 1984)........................6

*Bufil v. Dollar Fin. Group, Inc.*, 76 Cal. Rptr. 3d 804 (Ct. App. 2008) ..............................3

*Capital People First v. Dep't of Dev. Servs.*, 66 Cal. Rptr. 3d 300 (Ct. App. 2007)......................9

*City of San Jose v. Superior Court*, 525 P.2d 701 (Cal. 1974) .....................................................2, 6

*Collins v. Rocha*, 497 P.2d 225 (Cal. 1972) ............................................................3

*Daar v. Yellow Cab. Co.*, 433 P.2d 732 (Cal. 1967)...........................................................2, 6

*Evans v. Lasco Bathware, Inc.*, 101 Cal. Rptr. 3d 354 (Ct. App. 2009)..............................4

*Fireside Bank v. Superior Court*, 155 P.3d 268 (Cal. 2007) ............................................5

*Global Minerals & Metals Corp. v. Superior Court*, 7 Cal. Rptr. 3d (Ct. App. 2003)....................4

*Harper v. 24 Hour Fitness, Inc.*, 84 Cal. Rptr. 3d 532 (Ct. App. 2008) ..............................5

*Hopkins v. DeBeers Centenary AG*, CGC-04-432954, 2005 WL 1020868 (Cal. Super. Ct. Apr. 15, 2005)............................................................4, 5

*In re Cipro Cases I & II*, 17 Cal. Rptr. 3d 1 (Ct. App. 2004)..............................................7

*In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329 (Ct. App. 2010), *review denied* (Apr. 14, 2010), *as modified on denial of reh'g* (Feb. 8, 2010) ..............................3

*Lazar v. Hertz Corp.*, 191 Cal. Rptr. 849 (Ct. App. 1983) ..............................................5

*Lewis v. Robinson Ford Sales, Inc.*, 67 Cal. Rptr. 3d 347 (Ct. App. 2007)..........................6, 7, 8

*Linder v. Thrifty Oil Co.*, 2 P.3d 27 (Cal. 2000) ..............................................................2, 3

*Lockheed Martin Corp. v. Superior Court*, 63 P.3d 913 (Cal. 2003) ..............................5, 6, 7

*McGee v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 131 Cal. Rptr. 482 (Ct. App. 1976) ..................9

*Occidental Land, Inc. v. Superior Court*, 556 P.2d 750 (Cal. 1976) ..............................6

*Reyes v. Bd. Of Supervisors*, 242 Cal. Rptr. 339 (Ct. App. 1987) ..............................4

1  *Richmond v. Dart Indus., Inc.*, 629 P.2d 23 (Cal. 1981)............................................................3

2  *Sav-On Drug Stores, Inc. v. Superior Court*, 96 P.3d 194 (Cal. 2004) .............................3, 7, 8, 10

3  *Seastrom v. Neways, Inc.*, 57 Cal. Rptr. 3d 903 (Ct. App. 2007) ....................................................8

4  *Vazquez v. Superior Court*, 484 P.2d 964 (Cal. 1971)...............................................................6

5  ***Statutes Cited***

6  Cal. Bus. & Prof. Code §§ 17200, *et seq* ............................................................................1

7  Cal. Civ. Code § 382.......................................................................................................1

8  Cal. Civ. Code § 1781 ...............................................................................................6, 8, 9

9  Cal. Civ. Code §§ 1798.83, *et seq*..............................................................................1, 7

10 ***Secondary Sources Cited***

11 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2002)....................5

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**I.   INTRODUCTION**

This case presents a textbook class action. California's "Shine the Light Law," Cal. Civ. Code §§ 1798.83, *et seq.*, requires that companies like Defendant Time, Inc. ("Time" or the "Defendant") establish a procedure by which California customers can learn how they disclose the customers' personal information to third parties (the "Shine the Light Disclosures"). Time collects personal information from its California customers and shares that information with third party advertisers for direct marketing purposes but fails to provide its customers with the Shine the Light Disclosures or means through which the disclosures may be obtained. Defendant's choice to deny its California customers their legal rights to learn what personal information is being disclosed, and who is receiving it, violates the Shine the Light Law with respect to each and every California resident who has provided personal information to Time.

Plaintiff Nicholas Murray is one such customer. Mr. Murray provided his personal information to Time magazine—a Time publication. Thereafter, Time failed to provide Murray with the required Shine the Light Disclosures. In response, Plaintiff brought his class action complaint (the "Complaint") on behalf of a putative class of individuals, alleging violations of California's Shine the Light Law, Cal. Civ. Code §§ 1798.83, *et. seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

As explained below, Plaintiff's proposed class meets each of the prerequisites for class certification under Cal. Civ. Code § 382 and class treatment of the claims alleged in Plaintiff's Complaint is superior to other available methods for the adjudication of the instant dispute. Accordingly, and for the reasons explained below, certification of the class is appropriate and the instant motion should be granted in its entirety. In the alternative, discovery should be allowed to go forward with respect to the class certification issues, if any, that the Defendant contests.

## II.    FACTUAL BACKGROUND

### A.    Facts Applicable to all Putative Class Members

Time is a publishing company that publishes various magazines. (Compl. ¶ 6.) Time collects and stores information about its customers, and shares such information with third party advertising companies. (Compl. ¶¶ 7, 8, 32-35.) Time collects the information by requiring all of its customers, including those residing in California, to share certain personal information when subscribing to any of its publications, including their names, mailing addresses, e-mail addresses, ZIP codes, telephone numbers, genders, and credit card information. (Compl. ¶¶ 30, 38.) Accordingly, each putative class member, as a Time subscriber and California resident, necessarily shared personal information with Time. (Compl. ¶¶ 30, 38.)

Time shares its customers' personal information with third parties for direct marketing purposes. (Compl. ¶¶ 32.) Unfortunately, however, Time does not provide its customers with the Shine the Light Disclosures, or the means through which its customers may obtain the Disclosures, as required by the Act. (Compl. ¶ 33.) In addition to stripping its customers of several protections afforded by the Act, Time's conduct deprives customers of their ability to control the dissemination of their personal information by denying them the ability to ascertain where and how such data is flowing and, as a result, diluting the value of their information as it exists in the personal information market. (Compl. ¶ 21.)

### B.    Facts Applicable to Plaintiff Nicholas Murray

Like each putative class member in this case, Plaintiff is a California resident, subscribed to a Time publication—Time magazine—and provided personal information to Time. (Compl. ¶¶ 36, 37.) In fact, Plaintiff provided Time with his full name, mailing address, e-mail address, ZIP code, telephone number, gender, birth date, and credit card information. (Compl. ¶ 38.) At all relevant times, Plaintiff has used his Time subscription primarily for personal, family, and household purposes. (Compl. ¶ 39.) Plaintiff has visited both Time, Inc.'s and Time magazine's

respective websites. (Compl. ¶ 39.)

**III.    THE PROPOSED CLASS IS BOTH ASCERTAINABLE AND HAS A WELL-DEFINED COMMUNITY OF INTEREST AMONG THE CLASS MEMBERS**

California courts "long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system." *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 30 (Cal. 2000) (citing *City of San Jose v. Superior Court*, 525 P.2d 701, 708 (Cal. 1974); *Daar v. Yellow Cab Co.*, 433 P.2d 732, 739 (Cal. 1967)). The question of whether a court should certify a putative class is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 335 (Ct. App. 2010), *as modified on denial of reh'g* (Feb. 8, 2010) (quoting *Sav-On Drug Stores, Inc. v. Superior Court*, 96 P.3d 194, 199 (Cal. 2004)). Rather, "[a] trial court ruling on a certification motion determines 'whether … the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.'" *In re Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d at 335 (quoting *Collins v. Rocha*, 497 P.2d 225, 228 (Cal. 1972)). Stated otherwise, "the assessment of suitability for class certification entails addressing whether a class action is superior to individual lawsuits or alternative procedures for resolving the controversy." *Bufil v. Dollar Fin. Group, Inc.*, 76 Cal. Rptr. 3d 804, 812 (Ct. App. 2008) (citation omitted).

"Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.'" *Linder*, 2 P.3d at 27 (quoting *Richmond v. Dart Indus., Inc.*, 629 P.2d 23, 28 (Cal. 1981)). Specifically, certification requires that a party establish both (1) the existence of an ascertainable class and (2) a well-defined community of interest among the class members. *Id.* (citing *Richmond*, 629 P.3d at 27-28). The "community of interest" requirement itself involves three factors: "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the

1  class; and (3) class representatives who can adequately represent the class." *Id.* (quoting

2  *Richmond*, 629 P.2d at 28).

3  Here, the facts and claims of this case readily lend themselves to certification of the

4  following class:

5  All California residents who have provided personal information to Time.[2] Accordingly,

6  this Court should certify the proposed class and grant the instant motion in its entirety.

7  **A.    The Proposed Class Is Readily Ascertainable And So Numerous That Individual Joinder Would Be Impracticable.**

8

9  i.    The Class Is Ascertainable.

10  The purpose of the ascertainability inquiry is "to give notice to putative class members as

11  to whom the judgment in the action will be *res judicata*." *Aguiar v. Cintas Corp. No. 2*, 50 Cal.

12  Rptr. 3d 135, 146 (Ct. App. 2006). At the class certification stage, ascertainability does not

13  require that a proponent identify individual class members or show that each class member has

14  been injured. *Evans v. Lasco Bathware, Inc.*, 101 Cal. Rptr. 3d 354, 359 (Ct. App. 2009). Rather,

15  a court examines the class definition, the size of the class, and the means available for identifying

16  class members to determine whether the class is ascertainable. *Id.* (citing *Reyes v. Bd. of

17  Supervisors*, 242 Cal. Rptr. 339, 343 (Ct. App. 1987)). Ultimately, "[i]n attempting to define an

18  ascertainable class, the goal is to use terminology that will convey sufficient meaning to enable

19  persons hearing it to determine whether they are members of the class plaintiffs wish to

20  represent." *Global Minerals & Metals Corp. v. Superior Court*, 7 Cal. Rptr. 3d 28, 47 (Ct. App.

21  2003).

22  In this case, there is little doubt that the class is ascertainable. First, the proposed class

23  definition, itself, gives each putative class member an objective means for determining whether

24  he or she is, in fact, part of the class. People need only determine that (a) they have provided

25  their personal information to Time (i.e., when signing up for a subscription or otherwise), and (b)

26  ────────────

27  [2]    Plaintiff anticipates the potential need to revise the class definition following the conclusion of discovery relating to class certification issues.

28

1   they are a California resident. (Compl. ¶ 40.) Second, the class is comprised of a finite number of

2   individuals (i.e., California residents that have provided personal information to Time). Third,

3   individual class members are identifiable both through the objective criteria spelled out in the

4   class definition and through Defendant's own records, at minimal expense to the parties or the

5   Court. *See, e.g., Hopkins v. De Beers Centenary AG*, CGC-04-432954, 2005 WL 1020868, at *3

6   (Cal. Super. Ct. Apr. 15. 2005) (class was ascertainable where it was "composed of a ... self-

7   identifying set of individuals who purchased diamonds ... and members [could] be ascertained

8   and [could] identify themselves based upon the purchase of diamonds during the Class period");

9   *Aguiar*, 50 Cal. Rptr. 3d at 146 (ascertainability requirement was satisfied where "members of

10  plaintiffs' proposed class [could be identified] from ... payroll records, which identify each

11  employee by name, job code, dates of employment and rate of pay").

     Ultimately, any given individual's membership in the class can be determined using

13  precise, objective criteria and can be otherwise verified through reference to Defendant's own

14  records. As a consequence, the Class is ascertainable.

15          ii.     The Class is so Numerous that Joinder of Each Individual Member Would
                    be Impracticable.

16  Numerosity is also satisfied in this case. In determining whether a proposed class is

17  sufficiently numerous, the Court may make common sense assumptions, but in any event, "as

18  few as 40 class members should raise a presumption that joinder is impracticable." Alba Conte &

19  Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3:5, at 247 (4th ed. 2002); *see also id.* at 243-

20  46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the

21  hundreds, or thousands ... In such cases, the impracticability of bringing all class members

22  before the court has been obvious...."); *see also Lazar v. Hertz Corp.*, 191 Cal. Rptr. 849, 854-

23  55 (Ct. App. 1983); *Hopkins*, 2005 WL 1020868, at *3.

     Though it is presently unclear exactly how many members comprise the class, common

25  sense would dictate that many thousands of California residents have subscribed to any one of

26

27

28

1   Time, Inc.'s publications. In sum, the proposed class satisfies both the ascertainability and

2   numerosity requirements for class certification.

**B.      There is a Sufficient Community of Interest to Justify Class Treatment of the Claims at Issue in this Case.**

4       As stated, the second broad requirement for certification—the "community of interest"

5   requirement—"embodies three factors: (1) predominant common questions of law or fact; (2)

6   class representatives with claims or defenses typical of the class; and (3) class representatives

7   who can adequately represent the class." *Harper v. 24 Hour Fitness, Inc.*, 84 Cal. Rptr. 3d 532,

8   538 (Ct. App. 2008) (citing *Fireside Bank v. Superior Court*, 155 P.3d 268, 282 (2007)). "[T]his

9   means 'each member must not be required to individually litigate numerous and substantial

10  questions to determine his [or her] right to recover following the class judgment; and the issues

11  which may be jointly tried, when compared with those requiring separate adjudication, must be

12  sufficiently numerous and substantial to make class action advantageous to the judicial process

13  and to the litigants." *Harper*, 84 Cal. Rptr. 3d at 538 (quoting *Lockheed Martin Corp. v. Superior*

14  *Court*, 63 P.3d 913, 920 (Cal. 2003) (internal quotations omitted)). As shown below, common

15  questions of law and fact predominate over issues affecting only individual members of the

16  proposed class, Plaintiff's claims are typical of those of the other members of the class, and he

17  and his counsel will continue to adequately represent the interests of the proposed class.

i.      Common Questions of Law and Fact Predominate.

19      Under Cal. Civ. Code § 1781(b)(2), the "common questions" requirement for class

20  certification looks to whether "[t]he questions of law or fact common to the class are

21  substantially similar and predominate over the questions affecting the individual members." *Id.*

22  Although common questions of law or fact must predominate. Plaintiff is not required to show

23  that there is complete absence of individual issues. *See Daar*, 433 P.2d at 742-43. Rather, the test

24  of predominance is whether the common questions are "the principal issues in any individual

25  action, both in terms of time to be expended in their proof and of their importance, [so] that if a

26  class suit were not permitted, a multiplicity of legal actions dealing with identical basic issues

27

28

1   would be required in order to permit recovery by each [absent class member]." *Vasquez v.*

2   *Superior Court*, 484 P.2d 964, 970 (Cal. 1971). Stated otherwise, a class is not certifiable "where

3   there are diverse factual issues to be resolved, even though there may be many common

4   questions of law ... [or] where each member's right to recover depends on facts peculiar to his

5   case[.]" *Basurco v. 21st Century Ins. Co.*, 133 Cal. Rptr. 2d 367, 373 (Ct. App. 2003) (citing

6   *Brown v. Regents of University of California*, 198 Cal. Rptr. 916, 919-20 (Ct. App. 1984); *City of*

7   *San Jose v. Superior Court*, 525 P.2d 701, 709 (Cal. 1974). Common issues are typically found

8   to be present where, as in this case, a defendant's alleged conduct is the same with regard to each

9   putative class member. *Lockheed*, 63 P.3d at 919; *see also Occidental Land, Inc. v. Superior*

10  *Court*, 556 P.2d 750, 754 (Cal. 1976).

11          The common questions requirement is principally a "practical consideration," and trial

12  courts are left with the "discretion ... to evaluate the efficiencies and practicalities of permitting

13  group action[.]" *Lewis v. Robinson Ford Sales, Inc.*, 67 Cal. Rptr. 3d 347, 352 (Ct. App. 2007);

14  *see also id* ("For example, trial courts can fashion methods to manage individual questions that

15  are 'procedurally innovative'") (quoting *Sav-On*, 96 P.3d at 208); *see also In re Cipro Cases I &*

16  *II*, 17 Cal. Rptr. 3d 1, 6 (Ct. App. 2004). "[T]o determine whether common questions of fact

17  predominate the trial court must examine the issues framed by the pleadings and the law

18  applicable to the causes of action alleged." *Ali v. U.S.A. Cab Ltd.*, 98 Cal. Rptr. 3d 568, 578 (Ct.

19  App. 2009).

20          In this case, members of the classes share an almost identical common core of facts. First,

21  each putative class member is a California resident that provided personal information to Time

22  during the relevant time period—a simple "did they or didn't they?" (Compl. ¶¶ 30, 38.) Second,

23  and as alleged under Plaintiff's theory of the case, Time's liability under the Shine the Light Law

24  stems from its failure to include certain disclosures on its website that are mandated by the Act—

25  a fact that applies to each class member in the same way. (Compl. ¶ 54.) In particular, Time

26  violates the Act by (i) failing to add a hyperlink entitled "Your Privacy Rights" to its home page,

27

28

Plaintiff's Memorandum in Support                    7
of Motion for Class Certification

1   (ii) failing to add a hyperlink on its home page to a page titled "Your Privacy Rights," (iii)

2   failing to designate a mailing address, e-mail address, telephone number, or facsimile number for

3   customers to deliver requests, and/or (iv) failing to describe its California customers' rights

4   under the Shine the Light Law. *See* Cal. Civ. Code § 1798.83(b)(1)(B). (A true and accurate

5   copy of Time's home page and privacy policy is attached as Exhibits A and B, respectively.)

6   Simply put, there are no relevant factual differences between class members, in terms of their

7   own conduct, or Defendant's action, or inaction, with respect to the class members.

8          Furthermore, the Defendant's liability with respect to the claims alleged in this action

9   will necessarily be the same for all class members. If Plaintiff is correct that Defendant's failure

10  to provide Shine the Light disclosures on its website gives rise to liability, then Defendant is

11  identically liable to each and every member of the class. Moreover, Plaintiff's UCL claim—

12  which relies wholly on the statute's "unlawful" prong—rises or falls with Defendant's liability

13  under the Shine the Light Law. As such, the legal questions in this case are identical for all class

14  members.

15         Ultimately, there should be no question that the primary legal and factual questions

16  outlined in Plaintiff's Complaint and as discussed herein, are common to each class member and

17  predominate over issues, if any do exist, affecting only individual members of the classes.

18  Accordingly, and because each of the claims and the respective elements thereof may be proven

19  using the same common set of evidence as described herein, Plaintiff's "theory of recovery … is,

20  as an analytical matter, likely to prove amenable to class treatment." *Lewis*, 67 Cal. Rptr. 3d at

21  352; *see also Id.* ("[C]ourts consistently look to the allegations of the complaint and the

22  declarations of attorneys representing the plaintiff class to resolve this question") (quoting *Sav-*

23  *on Drug Stores*, 96 P.3d at 200). Common questions therefore predominate.

24          ii.   Plaintiff's Claims Are Typical of the Claims of the Other Members of the
                  Class.

25         Pursuant to Cal. Civ. Code § 1781(b)(3), Plaintiff's claims—as the representative of this

26  case—must be typical of the claims of the other putative class members. Generally speaking, the

27

28

1   typicality requirement refers to the idea that Plaintiff's claims arise from the same general

2   conduct as those of the class. *Seastrom v. Neways. Inc.*, 57 Cal. Rptr. 3d 903, 908 (Ct. App.

3   2007). The existence of factual differences, however, will not preclude a finding of typicality. *Id.*

4   Thus, "[t]he test of typicality is whether other members have the same or similar injury, whether

5   the action is based on conduct which is not unique to the named plaintiffs, and whether other

6   class members have been injured by the same course of conduct." *Id.*

7         In this case, Plaintiff's claims are typical of those of his fellow class members. Plaintiff,

8   like each and every member of the class: (1) had provided personal information to Time (i.e.,

9   signed up for a subscription to a Time publication) and (2) is a California resident. (Compl. ¶¶

10  30, 38.) Furthermore, and like each and every member of the class, Plaintiff was denied the

11  ability to exercise his legally prescribed right under the Shine the Light Law because of

12  Defendant's failure to include the requisite disclosures on its website. (Compl. ¶¶ 32-35, 55, 56.)

13        Consequently, just as there is no relevant difference among the claims of each class

14  member, so too is there no relevant difference between Plaintiff's claims and those of the

15  putative class members. As such, Plaintiff's claims are typical of those of the class.

16            iii.      <u>Plaintiff and His Counsel Have and Will Continue to Adequately
                        Represent the Interests of the Proposed Class.</u>

17        The final requirement to establish a community of interest looks to whether "[t]he

18  representative plaintiff[] will fairly and adequately protect the interests of the class." Cal. Civ.

19  Code § 1781(b)(4). The "adequacy" element requires that two factors be satisfied. First, the class

20  representative's personal claims must be consistent with the claims of the other members of the

21  proposed class. *Capital People First v. Dep't of Dev. Servs.*, 66 Cal. Rptr. 3d 300, 317 (Ct. App.

22  2007). Second, the proposed representative's counsel must have the experience, skills, and

23  resources necessary to conduct the litigation. *McGhee v. Bank of Am. Nat'l Trust & Sav. Ass'n*,

24  131 Cal. Rptr. 482, 487 (Ct. App. 1976).

25        In this case, Plaintiff has the same interests as the proposed class members. Plaintiff has

26  alleged that Defendant deprived him of his statutorily proscribed privacy protections, and

27

28

1   profited from sharing his personal information without giving him the ability to control or

2   otherwise learn about the dissemination of that information. (Compl. ¶¶ 32-35, 54, 55.) As a

3   result, and like the other members of the class, Plaintiff's interests lie in enforcing his statutory

4   rights under the Shine the Light Law, regaining a meaningful choice as to how his personal

5   information is shared, and ensuring that Defendant corrects its conduct moving forward.

6   Accordingly, Plaintiff has no interests antagonistic to those of the class.

7        Similarly, Plaintiff's attorneys are well-respected members of the legal community, who

8   have extensive experience in class actions of similar size, scope, and complexity to the instant

9   action. Moreover, they have regularly engaged in major complex litigation involving the Internet

10   and consumer technology issues, and have the resources necessary to conduct litigation of this

11   nature. Not surprisingly, then, Plaintiff's counsel have already diligently investigated,

12   prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this

13   action, and will continue to do so throughout its pendency. (*See* Firm Resume of Edelson

14   McGuire, LLC, a true and accurate copy of which is attached as Exhibit C.)

15        Both Plaintiff and his counsel will adequately represent the class. The adequacy of

16   representation prerequisite is satisfied.

17       **C.**    **Class Treatment is the Superior Method for Adjudication of the Claims at Issue in this Case.**

18        The final, and perhaps most important, requisite to class certification is a determination

19   whether the class mechanism is superior to all other available methods for adjudication of the

20   controversy at hand. To determine whether class treatment is superior, courts typically look to (i)

21   the interest of each member in controlling his or her own case personally; (ii) difficulties that are

22   likely to be encountered in managing a class action; (iii) the nature and extent of any litigation by

23   individual class members already in progress; and (iv) the desirability of consolidating all claims

24   in a single action before a single court. *Ali*, 98 Cal. Rptr. 3d at 584.

25        Absent class treatment in this case, each individual member of the classes would be

26   required to present the same or essentially the same legal and factual arguments, in separate and

27

28

1  duplicative proceedings, the result of which "would be a multiplicity of trials conducted at

2  enormous expense to both the judicial system and the litigants." *Sav-On Drug Stores*, 17 Cal.

3  Rptr. 3d at 923. "It would be neither efficient nor fair to anyone, including defendants, to force

4  multiple trials to hear the same evidence and decide the same issues." *Id.* Moreover, there is no

5  indication that members of the classes have a strong interest in individual litigation, let alone any

6  disincentive to pursue their claims in a class action, given the small amount of damages likely to

7  be recovered relative to the resources required to prosecute such an action. Class certification

8  will also promote consistency of rulings and judgments, giving all parties the benefit of finality.

9      Thus, class treatment of the claims alleged in this action is superior to all other available

10  methods of adjudication, satisfying the final requisite to certification.

11  **IV.    CONCLUSION.**

12      For the foregoing reasons, Plaintiff Nicholas Murray, respectfully requests that the Court

13  grant the instant motion and enter an Order: (i) certifying the proposed class as defined herein;

14  (ii) appointing Plaintiff class representative and his counsel Class Counsel; (iii) requiring that

15  notice of class certification be sent to all putative class members; (iv) providing leave to take

16  discovery relevant to any class certification requirements that the Defendant claims are unmet in

17  this case, and (v) providing such other and further relief as the Court deems equitable and just.

18  Dated: December 27, 2011            NICHOLAS MURRAY, INDIVIDUALLY AND ON

19                                      BEHALF OF ALL OTHERS SIMILARLY SITUATED,

20

21                                      By: /s/ Sean Reis

                                        One of Plaintiff's Attorneys

22

23  SEAN REIS (sreis@edelson.com) - SBN 184044

    EDELSON MCGUIRE, LLP

24  30021 Tomas Street, Suite 300

    Rancho Santa Margarita, California 92688

25  Tel: (949) 459-2124

    Fax: (949) 459-2123

26

27  *Counsel for Plaintiff and the putative class*

28

# **EXHIBIT A**

pdfcrowd.com

HOME

NewsFeed | U.S. | Politics | World | Business | Money | Tech | Health | Science | Entertainment | Opinion



The Top 10 Worst
Christmas Movies

In Memory of
Photographers We
Lost in 2011

*Star Wars* on Earth: A
Galaxy Very, Very
Close

The Science of Animal
Democracy:
Americans Vote with
the Fishes

GET TIME
ACCESS

# TIME

SEARCH TIME.COM

TOYOTA *moving forward*

Tuesday, December 20, 2011





KRT / REUTERS

# A New North Korea: Could Kim Jong Un Liberate His Nation's Economy?

When it comes to the nation's next leader, there is error for hoping on a young man...

**Latest Headlines**

UPDATED: 5:05PM ET

- U.S. Commander from Iraq Arrives Home
- Bankers Among 5 Dead in N.J. Plane Crash
- Ohio State Hit With One-Year Bowl Ban
- U.S. Housing Starts Up, Despite Low Levels
- Trade Group: Holiday Flying Falls Slightly
- Deadly Storm Halts Travel Across Plains
- Turkey Detains 40 for Alleged Rebel Links
- Sunni Iraq VP Denies Running Hit Squads
- 'Tis the Season for Christmas Tree Syndrome
- The Food Network's Oddest Holiday Recipes
- Prince Harry Helps Rescue Mugged Friend
- What's Next For T-Mobile After Merger Fail?
- CNN: Man Guilty of Killing UNC Student
- CNNMoney: Dow Jones Soars 300 Points
- ♦ Vaclav Havel: 1936–2011

Open in browser  PRO version  Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

the power of posi ive

**Amway™**

A GLOBAL OPPORTUNITY

Subscribe to TIME and get **ALL ACCESS**

## Quotes of the Day »



*"We want to emerge from this crisis and build a safe, modern Syria — a Syria that will be a model of democracy."*

WALID MUALLEM, Syrian Foreign Minister, after signing an Arab League protocol that will deploy observers in Syria; the country had wavered on whether to agree to the observers, prompting the Arab League to impose economic sanctions

More Quotes »

when it comes to the nation's next leader, there is cause for hope: as a young man, Kim lived in Europe under an assumed name and saw how affluent the West is Full Story »

- After the Mourning, Korean Reunification?
- Will Kim Jong Il Become the World's Latest Embalmed Leader?
- My Eerie, Sad Trip into North Korea
- Kim Jong Il: A Life Shrouded in Myth, Mystery, Mayhem
- Photos: Mourning the Dear Leader 🔒

- Why Beijing Maintains Its Friendship with North Korea
- Kim Jong Un Visits Father's Body; North Korea Media Hails New Leader
- Inside the Kim Family Tree
- 10 Things You Don't Know About Kim Jong Un
- The Iconography of Kim Jong Il 🔒

## Must Reads



**MOVIE REVIEW »** Fincher's *Girl with the Dragon Tattoo*: Thanks but No Thanks
BY RICHARD CORLISS

**TECHNOLOGY »** HTC Android Phones Will Get a Bit Worse After Apple Patent Win
BY JARED NEWMAN

**HEALTH »** Truth Hurts: Patients Want to See Their Doctors' Notes
BY ALICE PARK

**MONEY »** The 5 Most Surprising Findings from the 2010 Census
BY JOSH SANBURN

**OPINION »** Be Kind to the Holiday Card–Impaired
BY RUTH DAVIS KONIGSBERG

**POLITICS »** PolitiFact's Semantic Distinction of the Year: Ending Medicare
BY ADAM SORENSEN

Inside TIME.com

# Inside TIME.com

## MONEY



Experts: Nothing Crazy About Giving Christmas Gifts to Pets

Lead by Example? Hardly — Boomer Kids Outsave Their Parents

Saudi Prince Invests $300 Million in Twitter

## ESSAYS

Gimme Some Truth for Xmas

Why E-Reading with Your Kid Can Impede Learning

Should You Be Allowed to Sell Your Bone Marrow?

## TRENDING



Why Hanukkah Is the Most Celebrated Jewish Holiday in America

Family Ties: Romney and Bush Are Distant Cousins

Prince Harry Rides to the Rescue of Mugged Friend

## POLITICS

Newt's Rise and Fall: A Lesson in Republican Frustration

House Revolt on Payroll-Tax Cut Throws Congress into Familiar Late-December Chaos

Barney Frank Looks like He's Enjoying Retirement

---

## Introducing LightBox

A New Blog from the Photo Editors of TIME

Full List »

## Most Popular »

MOST READ    MOST EMAILED

1. Person of the Year 2011
2. 14 Days Till Iowa: Newt Crushed
3. Kim Jong Un: 10 Things You Might Not Know About North Korea's New Leader
4. The Top 10 Everything of 2011
5. 10 Buzzwords to Take Off Your LinkedIn Profile Now
6. Kim Jong Il: A Dictator's Passing
7. The Koreas: To Reunify or Not?
8. The Legal Case You've Been Waiting For? Mark Zuckerberg Vs. Mark Zuckerberg
9. After Kim Jong Il: A Look at the Kim Family Tree
10. Inside Kim Jong Il's Eerie Authoritarian World

brother at your side

---

## Multimedia

Videos | Photos                    More Videos »

### Your System Status

WE'RE SORRY!

You need to update your Flash Player.

Get ADOBE FLASH PLAYER

**IMPORTANT:** After installing the required upgrade please reload this browser window to view the video player.

This content requires the Adobe Flash Player. Get Flash

**Sponsored Links**

The Comm is No Defense

PRO version   Are you a developer? Try out the HTML to PDF API

---

## TIME
### Person of the Year
### The Protester



**GOING GREEN »**
Winning the Conservation War: How to Manage the World We're Stuck With
BY BRYAN WALSH

**ECONOMY »**
Why Europe's Backdoor Bailouts Won't Work
BY RANA FOROOHAR

**WORLD »**
Syrian Regime Agrees to Arab Monitoring, but

---

## The Covers Archive: Middle East

Search the Covers Archive

Search

## Current Issue »



Table of Contents

GET TIME ALL ACCESS

pdfcrowd.com

pdfcrowd.com



A Legacy of Innovation.

STEVE JOBS: THE BIOGRAPHY

FORTUNE

Available on
newsstands now.

Click here to
order on iTunes

Opposition Unimpressed
BY RANA ABOUZEID / GAMMARTH

WORLD »  Iraq: Al-Maliki's Attack on
Sunni Leaders Suggests a
Dark, Divided Future
BY TONY KARON

KEEPING SCORE »  NCAA Blunder: Changing
North Dakota's Tribal
Nickname
BY SEAN GREGORY

Photos



2011: Year of Mother Nature's Fury

TIME.com

10
Questions

TIME | FORTUNE
PRESENT
Energy
for tomorrow
IN ASSOCIATION WITH

Are you a developer? Try out the HTML to PDF API

Discover What Military Operatives & The Army Don't Want
You To Know
www.CloseCombatTraining.com

Gingrich in 2012?
Would you support Newt Gingrich for president? Vote in
poll.
www.newsmax.com/survey s

Brides from Cuba
1000s Women from Cuba and Latin America to Date &
Marry.
AmoLatina.com

open in browser   PRO version






TIME
Thinking BIG

Sponsored by
Prudential

## More Inside Time.com

### U.S. »
- U.S. Housing Starts Up, Despite Low Levels
- Bankers Among 5 Dead in N.J. Plane Crash
- Accused White House Shooter to Stay Held

### POLITICS »
- Mitt Romney: Mr. Plurality
- A Day of Iowa Splintering
- PolitiFact's Semantic Distinction of the Year: Ending Medicare

### WORLD »
- A New North Korea: Could Kim Jong Un Liberate His Nation's Economy?
- The Koreas: Could Kim Jong Il's Death Lead to Reunification?
- In the Former Rebel Capital: Benghazi Protests Libya's New Regime

### BUSINESS »
- Trade Group: Holiday Flying Falls Slightly
- Why Europe's Back Door Bailouts Won't Work
- AT&T Agrees to Drop Bid for T-Mobile

### SCIENCE »
- Winning the Conservation War: How to Manage the World We're Stuck With
- America Votes with the Fishes
- The Silly Science of Newt Gingrich

### ENTERTAINMENT »
- James Blake Is As Crazy As Ever On His New EP
- Holiday Movie Warning: Descendants, Young Adult Are Not the Fun Family Escapes Advertised
- Margin Call Director J.C. Chandor on VOD and the Awards Season Hustle

### BLOGS »
- NewsFeed
- Global Spin
- Ecocentric
- Battleland
- Moneyland
- Curious Capitalist
- Techland
- The Page
- Swampland
- Tuned In
- Healthland
- Ideas

### PHOTOS »
- Kim Jong Il: A Dictator's Passing
- Vaclav Havel: 1936–2011
- Police and Protesters Clash in Cairo

### LIGHTBOX »
- Cool Cats and Tom Boys: Ken Russell's The Last of the Teddy Girls'
- In Memory of Photographers We Lost in 2011
- Kim Jong Il as First Among Equals

### BEST & WORST LISTS »
- Person of the Year 2011
- TIME's Gift Guides: Stylish Books
- The Top 10 Everything of 2011

### MAGAZINE »
- Person Of The Year: The Protester
- William McRaven: The Admiral
- Ai Weiwei: The Dissident

### TRAVEL »
- Capital Appreciation: Board a Bus for the Best Way to See Brasilia
- High Times: Chill Out at the Summit of Ho Chi Minh City
- The Mild West: The Beauty of Remotest Brittany

### PEOPLE »
- 10 Questions for David Attenborough
- 10 Questions for Portuguese President Aníbal Cavaco Silva
- 10 Questions for John Ashbery

## Stay Connected with TIME.com

  

Subscribe to    Sign Up for    Get the TIME    Read TIME Mobile    Become a    Get TIME

open in browser  PRO version    Are you a developer? Try out the HTML to PDF API    pdfcrowd.com



pdfcrowd.com

# TIME

RSS Feeds | Newsletters | Magazine iPad Edition | on your Phone | Fan of TIME | Twitter Updates | Get TIME ACCESS

NewsFeed | U.S. | Politics | World | Business | Money | Health | Science | Entertainment | Photos | Videos | Specials | Magazine

LIFE

© 2011 Time Inc. All rights reserved | Privacy Policy | RSS | Newsletter | Mobile | TIME For Kids | LIFE.com
Subscribe | Contact Us | Terms of Use | Media Kit | Reprints & Permissions | Help | Site Map | Ad Choices ▷

Our partners

CNN   CNNMoney

open in browser   PRO version   Are you a developer? Try out the HTML to PDF API

# EXHIBIT B

# TIME

# PRIVACY NOTICE

**Table of Contents**

- The Information We Collect
- How We Use the Information
- Collection of Information by Third-Party Sites and Sponsors
- Privacy Options
- Cookies
- Our Commitment to Security
- How You can Access or Correct Information
- Special Note for Parents
- Changes to this Notice
- How to Contact Us

European Union Privacy Information
Canada Privacy Information

This is the Privacy Policy for the United States of America which applies to you if you live outside the European Union or Canada.

Thank you for visiting TIME, a site within the network of sites of Time Inc. and its subsidiaries, each of which have adopted this Privacy Notice. Your privacy is important to us. To better protect your privacy, we provide this notice explaining our information practices and the choices you can make about the way your information is collected and used by Time Inc. and its subsidiaries. Click here for a list of the sites of Time Inc. and its subsidiaries which are governed by this Privacy Notice.

**The Information We Collect**

Through Time Inc. publications, websites and other media, you can order publications and products, and engage in various activities like entering contests or sweepstakes, playing games, taking quizzes, voting in polls or otherwise expressing an opinion, subscribing to one of our services, such as newsletters, or participating in one of our online forums or communities. Your personally identifiable information may be required to engage in these activities as well as to receive products and services that you may have requested. The types of personally identifiable information that may be collected at these pages and elsewhere include but are not limited to: name, address, gender, e-mail address, telephone number, fax number and credit or debit card information.

Open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

back to top

We may also collect information about your personal or professional interests and use of or opinions about various products, programs and services. For instance, we may ask you to identify your job or industry to qualify you for free business magazines.

At some Time Inc. sites and through certain promotions, you can submit information about other people. For example, you might submit a person's name, mailing and/or e-mail address to send a gift or electronic greeting card. The types of personally identifiable information that may be collected about other people at these pages include: recipient's name, address, e-mail address and telephone number.

We may also collect certain non-personally identifiable information when you visit our web pages or use our applications, such as the type of browser and operating system you are using, your IP Address and your Internet service provider, and location-based information.

## How We Use the Information

We may use the information you provide about yourself or others to fulfill requests for our publications, products or services, to respond to inquiries about offerings and to offer other products, programs or services that may be of interest.

We may combine information we receive with outside records and share such information with third parties to enhance our ability to market to you those products or services that may be of interest to you.

We may disclose personally identifiable information to third parties whose practices are not covered by this privacy statement (e.g., other marketers, magazine publishers, retailers, participatory databases and non-profit organizations) that want to market products or services to you.

When you request a magazine, service or other product, we will forward the information you give us to the publisher or provider for fulfillment. They may contact you with special offers of possible interest.

We sometimes use this information to communicate with you, such as to notify you when you have won one of our contests or sweepstakes, or when we make changes to subscriber agreements, to fulfill a request by you for an online newsletter or to contact you about your account.

If you choose to submit content (e.g., a "letter to our editors" or an online review), we may publish your name, screen name and other information you have provided to us.

The information we collect in connection with our online forums and communities is used to provide an interactive experience. We use this information to facilitate participation in these online forums and communities and, from time to time, to offer you products, programs or services.

We sometimes use the non-personally identifiable information that we collect to improve the design and content of our

open in browser PRO version    Are you a developer? Try out the HTML to PDF API    pdfcrowd.com

publications and websites, and to enable us to customize your Internet experience. We also may use this information to analyze site usage, as well as to offer you products, programs or services.

We will disclose information we maintain when required to do so by law, for example, in response to a court order or a subpoena. We also may disclose such information in response to a law enforcement agency's request.

Agents and contractors of Time Inc. that have access to personally identifiable information are required to protect this information in a manner that is consistent with this Privacy Notice by, for example, not using the information for any purpose other than to carry out the services they are performing for Time Inc.

We may transfer your personally identifiable information to other Time Inc. offices for internal management and administrative purposes. Your personal data will be transferred to other Time Inc. offices where necessary for the performance or conclusion of our contractual obligations to you or for your benefit. Transfers of personally identifiable information may also be made where necessary for the establishment, exercise or defense of legal claims.

Please note that if Time Inc. or any of its subsidiaries or lines of business is sold or otherwise disposed of, including through merger of, consolidation or sale of assets, the relevant customer database, including personally identifiable information we may possess about you, may, in whole or in part, be sold, disposed of, transferred or otherwise disclosed as part of that transaction.

Although we take appropriate measures to safeguard against unauthorized disclosures of information, we cannot assure you that personally identifiable information that we collect will never be disclosed in a manner that is inconsistent with this Privacy Notice. Inadvertent disclosures may result, for example, when third parties misrepresent their identities in asking the site for access to personally identifiable information about themselves for purposes of correcting possible factual errors in the data.

**Privacy Options**
If you prefer not to receive traditional mail or other off-line promotions from this or any other Time Inc. property or any companies not owned by Time Inc., please click here.

If you prefer not to receive e-mail marketing from this or any other Time Inc. property or any companies not owned by Time Inc., please click here.

Time Inc. sites will not use or transfer personally identifiable information provided to us in ways unrelated to the ones described above without also providing you with an opportunity to opt out of these unrelated uses.

**Collection of Information by Third-Party Sites and Sponsors**

back
to top

pdfcrowd.com

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

Some of our sites contain links to other sites whose information practices may be different than ours. You should consult the other sites' privacy notices, as we have no control over information that is submitted to, or collected by, these third parties.

Time Inc. sites sometimes may offer contests, sweepstakes, promotions, editorial features or other activities or offerings that are sponsored or co-sponsored by or presented with identified third parties. By virtue of your participation in such activities or offerings, your IP Address and the personally identifiable information that you voluntarily submit may be provided to both the Time Inc. site and the third parties. Time Inc. has no control over the third parties' use of this information.

Time Inc. sites may use reputable third parties to present or serve advertisements, including online behavioral advertisements, that you may see on the web pages and to conduct research about the advertisements. This privacy notice does not cover any use of information that such third parties may have collected from you (e.g., type of browser, operating system, domain name, day and time of visit, page(s) visited) or the methods used by the third-parties to collect that information (e.g., cookies, web beacons and clear gifs). For more information on the use of such third-parties, please click here.

## Cookies

To enhance your online experience we use cookies. Cookies are text files we place in your computer's browser to store your preferences. Cookies, by themselves, do not tell us your e-mail address or other personally identifiable information unless you choose to provide this information to us by, for example, registering at one of our sites. However, once you choose to furnish the site with personally identifiable information, this information may be linked to the data stored in the cookie.

We use cookies to understand Internet usage and to improve our content, offerings and advertisements. For example, we may use cookies to personalize your experience at our web pages (e.g., to recognize you by name when you return to our site), save your password in password-protected areas and enable you to use shopping carts on our sites. We also may use cookies to offer you products, programs or services. Similarly, as part of an arrangement with our business partners (including, those who present or serve the advertisements that you see on our web pages) we may also access cookies placed by others and allow others to access certain cookies placed by us.

We may also use small pieces of code such as "web beacons" or "clear gifs" to collect anonymous and aggregate advertising metrics, such as counting page views, promotion views or advertising responses. These "web beacons" may be used to deliver cookies that conform to our cookie policy. For more information regarding cookies, please click here.

## Our Commitment to Security

We have put in place appropriate physical, electronic and managerial procedures to safeguard and help prevent unauthorized access, maintain data security and correctly use the information we collect.

## How You can Access or Correct Information

back to top

open in browser PRO version   Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

To inquire about personally identifiable information that this Time Inc. site has collected about you, or how to correct factual errors in such information, please email us by clicking here.

**Special Note for Parents**
The site you are visiting is one of the Time Inc. general audience sites and is not intended for use by children. For more information about our online privacy practices for children's sites, consult the privacy notice at the children's site in which you are interested.

**Changes to this Notice** This Notice may be changed by Time Inc. The revised Notice will be posted to this page so that you are aware of the information we collect, how we use it and under what circumstances we may disclose it.

**How to Contact Us**
If you have any questions or concerns about the Time Inc. Privacy Notice or its implementation please contact us via email by clicking here or at the following address:

Time Customer Service
Attention: Consumer Affairs
3000 University Center Drive
Tampa, Florida 33612-6408

http://www.time.com/

This Privacy Notice was revised 1/20/2011.

back
to top

open in browser  PRO version  Are you a developer? Try out the HTML to PDF API

pdfcrowd.com

# EXHIBIT C

# EDELSON MCGUIRE, LLC FIRM RESUME

EDELSON MCGUIRE, LLC is a commercial litigation and legal consulting firm with attorneys in Illinois, Florida, New York, Colorado and California. The firm has several primary practice groups: plaintiffs' class action litigation (with a particular emphasis on technology cases), e-discovery and information technology, general commercial litigation and legal and political consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, the home equity credit reduction cases, and privacy class actions involving T-Mobile, Facebook, and Netflix. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON MCGUIRE is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions, and has been called a "class action 'super firm'" by a national organization. (Decalogue Society of Lawyers, Spring 2010.) As has been recognized by federal courts, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009) In appointing Edelson McGuire interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." -In Re JPMorgan Chase Home Equity Line of Credit Litig., No. 10 C 3647 (N.D.Ill, July 16, 2010).

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D.Cal) (order appointing Edelson McGuire interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D.Cal. Aug. 12, 2011) (appointing Edelson McGuire sole lead counsel due, in part, to its "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]")

We have several sub-specialties within our plaintiffs' class and mass action practice group:

**Consumer Technology Class Actions**:  We have established the key precedent under the Telephone Consumer Protection Act concerning text message spa, resulting in a $16,000,000 with 20th Century Fox, a $10,000,000 settlement with Simon & Schuster and a $7,000,000 settlement with Timberland Co.  We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

**Representative Settlements:**

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA):  Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois):  Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D.Ill):  Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.  Case settled for $16,000,000.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.):  Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12,000,000.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12,254,000.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.).  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.  Case settled for $10,000,000.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges.  Case settled for $9,000,000.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content

charges. Case settled for $7,600,000.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $7,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

***Privacy/Data Loss Class Actions:*** We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, some resulting from security breaches.

**Representative Cases:**

- *In re Facebook Privacy Litigation*, 10-cv-02389 (N.D. Cal.): Co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Netflix Privacy Litigation*, 5:11-cv-00379 (N.D.Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information.

- *In re Zynga Privacy Litigation*, 10-cv-04680 (N.D. Cal.): Co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *Gaos v. Google*, 10-cv-04809 (N.D. Cal.): Part of a team of attorneys in suit alleging that Google unlawfully disclosed its users' search queries to website owners and other third parties.

- *In re Sidekick Litig.*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

- *Desantis v. Sears*, 08 CH 00448 (Cook Cty): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

***Products Liability Class Actions***: We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32,000,000 settlement involving the largest pet food recall in the history of the United States and Canada.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mfirst supreme st ediation team in class action involving largest pet food recall in United States history. Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

***Banking Class Actions***: Edelson McGuire has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Its suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs.

**Representative Cases:**

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- *Levin v. Citibank, N.A.*, C-09-0350 MMC (N.D. Cal.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- Testified or slated to testify at town halls and/or state hearings in Florida and California on banks' suspensions of home credit lines.

- Settled numerous consumer class actions alleging fraud or other unconscionable behavior by banks and other lenders.

***General Consumer Protection Class Actions***:  We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cir. Ct. Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3,000,000.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

***Insurance Class Actions***:  We have prosecuted and settled multi-million dollar suits

against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

*Mass/Class Tort Cases*: Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cir. Ct. Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10,000,000.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations. All of our attorneys have regularly practiced in state and federal trial and appellate courts.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

Led by nationally-recognized eDiscovery expert Steven Teppler, our firm has taken the lead on eDiscovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, and authentication and admissibility issues uniquely inherent to computer generated information. This includes spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration.

## LEGAL AND POLITICAL CONSULTING

Legal and political consulting is an area of practice that sets EDELSON MCGUIRE apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business and legislative strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to bricks and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of Edelson McGuire. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile

"mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.   In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a Partner at EDELSON MCGUIRE. His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Myles spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues.

Since turning to plaintiffs' advocacy, Myles has had principle control over many nationwide and multi-state class actions.   Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others. He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Myles has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Myles graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association.

**RYAN D. ANDREWS** is a Partner and Group Chair at EDELSON MCGUIRE. He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Ryan engaged in all aspects of the prosecution and defense of claims on behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif.* While in law school, Ryan was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Ryan graduated from the University of Michigan in 2002, earning his B.A., *with distinction,* in Political Science and Communications.

**RAFEY S. BALABANIAN** is a Partner and Group Chair at EDELSON MCGUIRE. Rafey focuses his practice on prosecuting consumer technology class actions, banking class actions, and general consumer class actions. He is also co-chair of Edelson McGuire's business litigation group.

On the plaintiff's side, Rafey has been the court appointed lead counsel in numerous high-stakes class action litigation and has obtained settlements in excess of $50 million.

On the business litigation side, Rafey has represented individual and corporate clients in a wide variety of complex cases, including commercial disputes seeking damages of $60 million and several "bet the company" cases.

Rafey has first-chaired both jury and bench trials, engaged in extensive motion practice, and acted as lead counsel in several mediations and arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, Rafey received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Rafey received his B.A. in History, *with distinction,* from the University of Colorado – Boulder in 2002.

**MICHAEL J. MCMORROW** is a Partner at EDELSON MCGUIRE. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation.

Mike is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mike was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mike graduated magna cum laude from the University of Illinois College of Law in 2000, where

he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship recipient, and President of the Prisoners' Rights Research Project. Mike received his B.A. in Political Science from Yale University in 1994. Mike has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003.   His pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is a Partner of EDELSON MCGUIRE. Steven concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Steven has authored over a dozen articles relating to information technology law and routinely presents his work at conferences. Steven's recent publications include: *Spoliation in the Digital Universe, The SciTech Lawyer,* Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton: A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System*, e-filing Report, June 2005. Steven is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Steven graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., *summa cum laude*, from the City College of New York in 1977.   Steven is admitted to the bars of New York, the District of Columbia and Florida.

**STEVEN LEZELL WOODROW** is a Partner and Group Chair at EDELSON MCGUIRE and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif*, while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004. Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of

leadership and scholarship in his graduating class and also received the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with Distinction*, from the University of Michigan—Ann Arbor in 2002.

**SEAN P. REIS** is Of Counsel to EDELSON MCGUIRE . Sean is an experience trial attorney and business litigator. Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues. Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining Edelson McGuire, Sean was trained at an international law firm and later founded his own practice. In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics. Following that Sean graduated from Rutgers University School of Law, Newark where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**EVAN M. MEYERS** is Senior Counsel at EDELSON MCGUIRE. Evan is an experienced trial and appellate litigator and has handled a broad range of complex litigation matters, including contract disputes, securities and consumer fraud, employment discrimination, insurance coverage, antitrust, shareholder and tax disputes, business torts and other matters. Evan has managed all aspects of the litigation process, including evaluation and strategic analysis, drafting pleadings in state and federal trial and appellate courts, taking and defending depositions, arguing motions, and representing clients in mediations and settlement conferences. He has also successfully tried cases in state court.

Prior to joining Edelson McGuire, Evan worked at Drinker Biddle & Reath LLP, where he was an associate in the firm's commercial litigation practice group and represented a wide range of clients in federal and state courts, including manufacturers, insurance and financial services companies, government agencies, close corporations, hospitals, colleges and universities and not-for-profit entities.

Evan received his J.D., cum laude, from the University of Illinois College of Law in 2002, where he was an associate editor of the Elder Law Journal. Additionally, he served as a judicial extern with the Hon. Wayne R. Andersen of the U.S. District Court for the Northern District of Illinois. Evan received his bachelor's degree, with distinction, in political science from the University of Michigan in 1999.

**WILLIAM C. GRAY** is a Group Chair at EDELSON MCGUIRE. Bill has handled a broad range of complex litigation matters including; criminal matters, consumer and international fraud cases, labor and employment issues, and class actions. He has drafted pleadings and briefs, argued motions, and represented clients in mediations, arbitrations, state and federal courts, before human rights agencies, and before state and federal Department of Labor. Additionally, Bill has significant appellate advocacy experience and has argued in front of the Seventh Circuit Court of Appeals.

Bill previously worked at Sidley Austin LLP, and represented a wide range of clients, including Fortune 100 companies, in various forums, including manufacturers, insurance and financial services companies, government agencies, corporations, universities and not-for-profit entities. Additionally, he has participated in several high-profile cases resulting in favorable resolutions for his clients.

Bill received his J.D., cum laude, from Harvard Law School, where he was an editor of the Black Letter Law Journal. He also served as a research assistant for Professor Alan Dershowitz. Bill additionally spent a semester working in Jerusalem for the Simon Wiesenthal Center and was a member of the Criminal Code Commentary Committee for the country of Kosovo. Bill graduated from Indiana University with high honors. While at Indiana University, Bill was elected President of the Student Body for the campus's 40,000 students and was inducted into Phi Beta Kappa. He also appeared as an invited guest on MSNBC, The Mitch Albom Show, and The O'Reilly Factor.

Bill has been an active member of the legal community and has served in many pro bono matters. He currently serves on the Illinois State Bar Association Standing Committee on the Attorney Registration and Disciplinary Committee (ARDC), is a Board Member of the Decalogue Society of Lawyers (co-chair of the Young Lawyer's Committee), and is actively involved in the Anti-Defamation League and the American Cancer Society. Additionally, Bill has collaborated for years with the Northwestern Center on Wrongful Convictions in securing the release of wrongfully-convicted inmates.

**BRAD BAGLIEN** is an Associate at EDELSON MCGUIRE. Brad focuses his practice on privacy and technology class actions.

Brad previously worked for Sidley Austin LLP, where he represented a wide range of clients, including Fortune 100 companies, small businesses, and individuals. He has handled a variety of complex commercial litigation matters in state and federal courts, including consumer fraud actions, contract disputes, internal investigations, insurance class actions, and commercial tax litigation.

Brad graduated with honors from the University of Chicago Law School, where he participated in the Hinton Moot Court Competition and was an instructor in the Street Law program at several local high schools. During law school, Brad served as a judicial extern for the Honorable Mark Filip in the Northern District of Illinois.

Brad graduated from St. Olaf College with degrees in Economics and Political Science. While at St. Olaf, he was a captain of the baseball team and a member of the football team.

**CHRISTOPHER L. DORE** is an Associate at EDELSON MCGUIRE. Chris focuses his practice on prosecuting consumer technology fraud, text-spam, and credit reduction class actions.

Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. His article, What to Do With Omar Khadr? Putting a Child Soldier on Trial: Questions of International Law, Juvenile Justice, and Moral Culpability appeared in the John Marshall Law Review. Throughout law school, Chris

worked as a Legal Writing TA. He received a CALI Award for obtaining the highest grade in Voting and Election Law.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**KIRT GALLATIN** is an Associate at EDELSON McGUIRE.

Kirt received his Juris Doctor from Northwestern University School of Law.  While at Northwestern, Kirt served as a research assistant for Professor Stephen B. Presser and was an active member of the Student Funded Public Interest Fellowship and Latin Law Student Association.

Kirt graduated from Florida Gulf Coast University, magna cum laude, obtaining Bachelor degrees in both Legal Studies and Criminal Justice.  While at FGCU, Kirt was elected Student Body President and served on the FGCU Board of Trustees and the Florida Student Association Board of Directors. (Admission pending in November 2011).

**CHANDLER GIVENS** is an Associate at EDELSON McGUIRE, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, and illegal data retention.

Chandler graduated from the University of Pittsburgh School of Law. While in law school, he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. Chandler received CALI awards for the highest course grades in Negotiations as well as Telecommunications Law. He graduated *cum laude* from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has given talks on network security, including, beginning at the age of 14, lecturing to groups comprised of engineers from organizations such as NASA. Chandler currently leads a team of technology investigative researchers at the firm.

Prior to starting with the firm, Chandler interned at the Virginia Attorney General's Office and the U.S. Department of Justice in Washington, D.C. (Admission pending in November 2011).

**JOHN OCHOA** is an associate at EDELSON McGUIRE. John's practice focuses on consumer class action litigation.

John graduated *magna cum laude* from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the JOHN MARSHALL LAW REVIEW.  While in law school, John took advantage of various scholastic

opportunities, serving as a research assistant, externing with Judge Thomas Hoffman at the Illinois Court of Appeals, and competing in the ABA National Appellate Advocacy Competition. John was awarded a Herzog scholarship for his academic performance and earned CALI awards for the highest grade in Torts, Property, and Administrative Law.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**BENJAMIN H. RICHMAN** is an Associate at EDELSON MCGUIRE. Ben focuses his practice in the prosecution of consumer technology and other class actions, as well as general commercial litigation.

Ben received his J.D. from The John Marshall Law School, earning a Certificate in Trial Advocacy. During law school Ben served as Executive Student Publications Editor for The John Marshall Law Review and as a judicial extern for the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben also acted as a teaching assistant in several torts courses and earned the CALI award for the highest course grade in Contracts II. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions and complex litigation.

Ben graduated from Colorado State University, earning his B.S. in Psychology.

**ARI J. SCHARG** is an associate at Edelson McGuire LLC. He handles all aspects of litigation from pre-filing investigation through trial. In addition to class action litigation, Ari has substantial experience litigating commercial, real estate, employment, and constitutional matters. He also counsels entrepreneurs and works closely with startup companies to manage risk and raise capital.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website. He also regularly tries his cases before judges and juries, including a trial that spanned six months.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**IRINA SLAVINA** is an Associate at EDELSON MCGUIRE. As a Russian attorney, Irina obtained

her LL.M degree in International and Comparative Law, with High Honors, from Chicago-Kent College of Law in 2003. Since that time Irina has had a unique legal career in the United States that started in a boutique law office in Chicago and progressed to the legal department of a major gaming and entertainment company on the east coast.

While working in-house with General Counsel, Irina gained extensive experience in drafting and negotiating company contracts and addressing the day-to-day legal inquiries of management. Irina handled patrons' liability claims, worked with state and local government officials in obtaining and renewing company licenses, and assisted with all aspects of corporate governance and compliance.

Irina earned her J.D. from Chicago-Kent College of Law with High Honors, Order of Coif, in 2009. While in law school, Irina represented Chicago-Kent in the McGee National Civil Rights Moot Court Competition. Irina was also a member of the Chicago-Kent Law Review, and her student note on the issue of a casino liability to problem gambles was published in the March 2010 issue, 85 Chi.-Kent L. Rev. 369. Irina externed for the Honorable Susan E. Cox in the Northern District of Illinois, and earned the CALI award for obtaining the highest grade in Constitutional Law, Evidence, and Legal Writing III courses.

**BEN THOMASSEN** is an associate at Edelson McGuire, LLC and is a member of the Banking and Financial Services Practice Group.

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and competed in both the ABA National Appellate Advocacy and National Moot Court Competitions. Among other scholarships and awards, Ben earned seven CALI awards for the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before his legal career, Ben worked in and around the Chicago and Washington, D.C. areas, including freelance and firm-based work as a website designer/developer, and many years experience as a film projectionist and media technician for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago. (Admission pending in November 2011).

EXHIBIT D

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

DEC 2 2 2011

CLERK OF THE COURT
BY: ___ROSSALY DE LA VEGA___
Deputy Clerk

SEAN REIS (sreis@edelson.com) - SBN 184044
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Counsel for Plaintiff and the Putative Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| NICHOLAS MURRAY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **APPLICATION FOR APPROVAL OF COMPLEX DESIGNATION** |
| v. | |
| TIME, INC., a Delaware corporation, | |
| Defendant. | |

APPLICATION FOR COMPLEX DESIGNATION

1      Pursuant to Amended General Order Re: Procedure for Approval of Complex

2 Designation, Plaintiff, Nicholas Murray ("Plaintiff"), hereby applies for complex designation of

3 this case on the following grounds:

4      This is a class action case involving defendant's collection and use of personal

5 information of millions of consumers. Based on the sheer number of putative class members, the

6 case requires exceptional judicial management to avoid placing undue burdens on the court or

7 litigants and to expedite the case, keep costs reasonable, and promote efficient decision making

8 by the court, parties and counsel.

9      The factors of Rule 3.400 of the California Rules of Court support a complex designation

10 of this case. With millions of class members, there will likely be a large number of witnesses

11 and a substantial amount of documentary evidence. There are a large number of parties, and it is

12 anticipated that the case will require numerous pretrial motions, including a motion for class

13 certification. The case also will require substantial post-judgment supervision, as this case seeks

14 equitable and injunctive relief, in addition to the class action aspects.

15      Finally, because this is a class action, the case is provisionally designated as complex

16 under Rule 3.400(c).

17      For the foregoing reasons, plaintiff respectfully requests the court designate this case as

18 complex.

19

20 Dated: December 22, 2011              Respectfully submitted,

21                          NICHOLAS MURRAY, INDIVIDUALLY AND

22                          ON BEHALF OF ALL OTHERS SIMILARLY
                         SITUATED,

23

24                    By:_____

25                        One of Plaintiff's attorneys

26

27

28