**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MURRAY, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>TIME INC.,<br><br>    Defendant.<br>_____/ | No. C 12-00431 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**, **WITH LEAVE TO AMEND** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss filed by Defendant Time, Inc. ("Time"). The Court has considered the parties' papers, relevant legal authority, including the statements of recent decisions filed by Time, and the record in this case. The Court HEREBY GRANTS Time's motion, and it GRANTS Plaintiff leave to amend.

**BACKGROUND**

Plaintiff, Nicholas Murray ("Murray"), is a California resident, who subscribed to *Time* magazine, which is owned by Time. (Notice of Removal, Ex. B (Complaint ("Compl.") ¶¶ 35-36).) When he subscribed, Murray provided personal information to Time, including "*inter alia*, his full name, mailing address, e-mail address, ZIP code, telephone number, gender, birth date, and credit card information." (*Id.* ¶ 37.) Murray alleges that personal data, like the data he provided to Time, has commercial value. (*Id.* ¶¶ 14-20, 54.)

In 2003, the California legislature passed the "Shine the Light" Act (the "STL Law"). The STL Law provides, *inter alia,* that:

> if a business has an established business relationship with a customer and has within the immediately preceding calendar year disclosed personal information that corresponds to any of the categories of personal information set forth in paragraph (6) of subdivision (e) to third parties, and if the business knows or reasonably should know that the third parties used the personal information for the third parties' direct marketing purposes, that business shall, after the receipt of a written or electronic mail request, or if the business chooses to receive requests by toll-free telephone or facsimile numbers, a telephone or facsimile request from the customer, provide [specified] information to the customer free of charge....

Cal. Civ. Code § 1798.83(a)(1)-(2).

> A business required to comply with this section shall designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a). A business required to comply with this section shall, at its election, do at least one of the following:
>
> (A) Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated address or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.
>
> (B) Add to the home page of its Web site a link either to a page entitled "Your Privacy Rights" or add the words "Your Privacy Rights" to the Home page's link to the business's privacy policy. ...
>
> (C) Make the designated addresses, or means to obtain the designated addresses or numbers, readily available upon request at every place of business in California where the business or its agents regularly have contact with customers.

*Id.* § 1798.83(b).

> If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.

*Id.* § 1798.83(c)(2).

According to Murray, "Time shares its subscribers' personal information... to third party direct marketing companies for direct marketing purposes," but Time has not designated a mailing address, electronic mail address telephone number or facsimile number where customers can direct requests, as required by Section 1798.83(b)(1). (Compl. ¶¶ 31, 53.) Murray also alleges that Time "as a business operating almost exclusively online, .... does not have 'employees who regularly have contact with customers,'" and therefore cannot utilize the notice provision provided by Section 1798.83(b)(1)(A). (*Id.* ¶ 49.) Murray also alleges, "upon information and belief, [that] Time does not instruct or otherwise train its employees to respond to customer inquiries about obtaining Time's Shine the Light Disclosures as required by Section 1798.83(b)(1)(A). (*Id.* ¶ 50.) Thus, according to Murray, Time must rely exclusively on the method of notice provided by Section 1798.83(b)(1)(B), and he alleges that Time fails to comply with those requirements. (*Id.* ¶¶ 52-53, Exs. A-B.) Murray neither alleges that he made a request for information pursuant to Section 1798.83(a) nor alleges that he would have requested such information, if Time had provided the requisite contact information.

Murray asserts that Time's actions: (1) are a willful and intentional violation of the STL law; and (2) a violation California Business and Professions Code Sections 17200, *et seq.* (the "UCL"). Murray seeks, *inter alia*, a declaration that Time has violated the Shine the Light Act, an injunction prohibiting Time from engaging in the conduct alleged in the complaint and requiring Time to add the information required by Section 1798.83(b)(1)(B) to its website, damages, and civil penalties. (Compl., Prayer for Relief.)

## ANALYSIS

Time moves to dismiss on the basis that: (1) Murray lacks statutory standing to pursue his claim for a violation of Section 1798.83; (2) Murray lacks statutory standing to pursue his UCL claim; (3) Murray lacks standing under Article III of the United States Constitution; (4) Murray fails to state a claim for relief under Section 1798.83; and (5) Murray fails to state a claim for relief under the UCL. Because the Court finds that Murray lacks standing to pursue his claims, it does not reach each of Time's alternative arguments in favor of dismissal.

3

**A.      Applicable Legal Standards.**

      **1.      Federal Rule of Civil Procedure 12(b)(1).**

Time moves to dismiss, in part, on the basis that Murray lacks Article III standing. In order to resolve a motion to dismiss for lack of standing under Rule 12(b)(1), the Court "must accept as true all material allegations in the complaint, and must construe the complaint in" Plaintiffs' favor. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010); *see also Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion dismiss, [courts] presume that general allegations embrace those specific facts that are necessary to support the claim.") (internal cite and quotations omitted).

      **2.      Federal Rule of Civil Procedure 12(b)(6).**

Time also moves to dismiss, in part, on the basis that Murray lacks statutory standing. The Court evaluates that aspect of Time's motion under Rule 12(b)(6). *See, e.g., Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting that lack of statutory standing requires dismissal for failure to state a claim). A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility

4

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.     Murray Lacks Standing to Pursue His Claims.**

**1.     The Shine the Light Claim.**

Time argues that Murray does not have statutory standing to pursue his STL Law claim, because he did not make a request for information.[1] Murray argues that Time violated the STL Law by failing to provide the contact information required by Section 1798.83(b) and argues that violation injured him in two ways: (1) it diminished the economic value of his personal information ("economic injury"); and (2) it deprived him of information to which he is statutorily entitled ("informational injury"). There are very few cases interpreting the STL law, but courts in neighboring districts recently rejected these theories in similar cases and granted motions to dismiss for lack of statutory standing. *See Boorstein v. Men's Journal, LLC*, 12-CV-771 DSF, Order Granting Motion to Dismiss Second Amended Complaint (C.D. Cal. Aug. 17, 2012) ("*Boorstein II*")[2]; *Boorstein v. Men's Journal, LLC*, 2012 WL 2152815 (C.D. Cal. June 14, 2012) ("*Boorstein I*"); *see also King v. Conde Nast Publications*, 2012 WL 3186578 (C.D.

---

[1]     At least one state court sustained a demurrer to a similar challenge on the basis that "[a] statute designed to provide useful information to a customer, *upon request*, cannot be violated if there was no request made. No violation means there was no injury as a result of the alleged statutory violation." (*See* Doc. No. 40-1, *Reguiero v. XO Group, Inc.*, Case No. 30-2012-00535636, Order Ruling on Demurrer at 2:8-11(Orange Co. Sup. Ct. July 3, 2012); *see also id.* at 5:1-21 (finding that facts alleged did not establish injury or damages and dismissing claim under the UCL, because plaintiff failed to allege facts showing loss of money or property).)

[2]     Attached as Exhibit A to Docket No. 43-1, Time's Statement of Recent Decision.

5

Cal. Aug. 3, 2012) (following *Boorstein I*); *Miller v. Hearst Communications, Inc.*, 2012 WL 3205241 (C.D. Cal. Aug. 3, 2012) (same).

### a. Economic Injury.

In *Boorstein I*, the court rejected the plaintiff's theory of economic injury on the basis that "even if cognizable, ... the statute requires that [a plaintiff's] injury be caused by a violation of the statute." 2012 WL 2152815, at *2. The court noted that the STL Law was designed to require companies to disclose to customers the information they do sell and to whom. The court reasoned that, because the STL Law does not preclude a company from selling personal information, even a company did provide the contact information required under Section 1798.83(b), a failure to comply with that provision would "not reduce the value of" a plaintiff's personal information. *Id.*, 2012 WL 2152815, at *2. The court also concluded that the market value of a plaintiff's personal information would likely be diminished by the time a plaintiff made a request for information under the STL Law, because it only relates to disclosure of personal information "within the immediately preceding calendar year," rather than potential future disclosures of personal information. *Id.* On that basis, the court the alleged violation "was not the cause of the purported economic injury," and found that the plaintiff's theory of economic injury did not provide him "with statutory standing to sue." *Id.*, 2012 WL 2152815, at *3.

Although Murray may face difficulties in proving causation, at this stage, the Court cannot find that Murray would never be able to show Time's conduct caused the value of his personal information to be diminished. However, he has failed to allege sufficient facts to establish such an injury. Murray alleges that consumer data has "inherent monetary value," that "consumers engage in *quid pro quo* transactions with online business whereby individuals exchange personal information for services," and that "companies now offer individuals the opportunity to sell their personal information themselves." (Compl., ¶¶ 16-17, 19.) However, Murray does not connect these general allegations to facts relating to the value of *his* personal information. Murray also has not alleged that, if he had the contact information required under

6

Section 1798.83(b), he would have attempted to sell his information and lost the opportunity to do so.

Accordingly, the Court concludes that Murray has not alleged sufficient facts to show he suffered an economic injury.[3] *See also King*, 2012 WL 3186578, at *3; *cf. LaCourt v. Specific Media, Inc.*, 2011 WL 2473399, at * 4 (C.D. Cal. Apr. 28, 2011) (noting that court "probably would decline to say that it was categorically impossible for [p]laintiffs to allege some property interest" relating to value of personal information, but finding that the plaintiffs failed to "identify a single individual who was foreclosed from entering into a 'value-for-value exchange'" as a result of defendant's practices).

### b. Informational Injury.

Murray also claims to have suffered injury on the basis that he was deprived of information to which he was statutorily entitled. Murray relies in part on a line of cases that recognize that an injury can "exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Edwards v. First Am. Financial Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (quoting *Fulfillment Servs., Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir. 2008)). Murray also relies on cases in which courts have found a plaintiff to have standing when he or she "fails to obtain information which must be publicly disclosed pursuant to a statute." *Federal Elec. Com'n v. Akins*, 524 U.S. 11, 21 (1998); *see also Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

The *Boortstein I* court considered, and rejected, these same arguments, in part on the basis that "the STL [L]aw does not allow a cause of action based solely on a failure to comply with the statute." *Boorstein I*, 2012 WL 2152815, *see also King*, 2012 WL 3186578, at *3-4. Again, Murray neither alleges that he requested information from Time nor alleges that he would requested information from Time, if Time provided him with the means to do so. The

---

[3] In *Boorstein I*, the court did not specifically address whether a plaintiff also must establish injury to seek civil penalties or injunctive relief. That court recently granted a motion to dismiss the plaintiff's second amended complaint and concluded that the plaintiff was required to establish injury in order to sue for civil penalties and injunctive relief. *See* Docket No. 43-1, Ex. A, *Boorstein II*, Slip. Op. at 1.

7

*Boorstein I* court also rejected the plaintiff's theory of informational injury on the basis that "[c]ourts have also recognized that a cognizable 'informational injury' must be distinct from a mere 'procedural injury.'" *Boorstein I*, 2012 WL 2152815, at *4 (citing *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1258-60 (9th Cir. 2010)); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation - a procedural right *in vacuo* - is insufficient to establish Article III standing.").

In *Wilderness Society,* the plaintiffs challenged certain United States Forest Service regulations, which limited the scope of and availability of notice and appeals procedures under the Forest Service Decisionmaking and Appeals Reform Act ("ARA"). The plaintiffs in that case argued that these restrictions caused them informational injury. The Ninth Circuit held that the plaintiffs lacked standing, reasoning that:

> Congress's *purpose* in mandating notice in the context of the ARA was not to disclose information, but rather to allow the public opportunity to comment on the proposals. Notice is provided as a predicate for public comment. ... In other words, the ARA grants the public a right to process and to participation. Even though these rights necessarily involve the dissemination of information, they are not thereby *tantamount* to a right to information per se.

622 F.3d at 1259 (emphasis in original). Although the plaintiffs in *Wilderness Society* urged the court "to recognize an informational injury as a result of a procedural deprivation," the court declined to do so, because that approach would re-frame "every procedural deprivation in terms of informational loss. This approach would allow an end run around the Supreme Court's procedural injury doctrine and render its direction in *Summers* meaningless." *Id.* at 1260.

The *Boorstein I* court found the plaintiff's theory of informational injury to be analogous to the theory advanced by the plaintiffs in *Wilderness Society*.

> As in *Wilderness Society*, the alleged violations here do not inflict an informational injury by depriving [p]laintiff of statutorily-required disclosures about how his personal information is used. Instead, it deprives the [p]laintiff of [d]efendants' *contact information* - information meant to facilitate requests for disclosures. The STL law's requirements are not designed to ensure that consumers have access to contact information for its own sake, and thus the failure to provide that information inflicts merely a procedural injury.

8

*Boorstein I*, 2012 WL 2152815, at *4.

Murray does not allege that Time deprived him of the identity of any entities with which Time shared Murray's personal information. Rather, he claims that Time deprived him of the ability to obtain that information by failing to provide its contact information. Further, Murray does not allege that he would have requested the information required to be disclosed under the STL Law if Time had provided the contact information. Murray also premises his claims solely on a violation of Section 1798.83(b), rather than alleged violations of the STL Law's provisions requiring disclosure of specific information. The Court finds that Murray's allegations are no more than an attempt to re-frame an alleged procedural deprivation into an informational injury. Under *Wilderness Society*, those allegations are insufficient. *See also Boorstein I*, 2012 WL 2152815, at *4.

Accordingly, the Court finds that Murray lacks statutory standing to pursue the STL Law claim on this basis as well.

### 2. The UCL Claim.

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). A plaintiff can show "injury in fact" by showing "a distinct and palpable injury suffered as a result of the defendant's actions," or "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical[.]" *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590 (2008) (internal citations and quotations omitted).

For the reasons set forth above, the Court concludes that Murray has not alleged sufficient facts to show economic injury. Accordingly, Murray fails to sufficiently allege that he lost money or property as a result of Time's allegedly wrongful business practices and lacks statutory standing to pursue the UCL claim.

9

### 3. Injunctive Relief.

Murray also seeks injunctive relief pursuant to Section 1798.84(e), which provides that "[a]ny business that violates, proposes to violate, or has violated this title may be enjoined." (Compl., Prayer for Relief, ¶ C.) Assuming *arguendo* that this provision of the STL Law does not require a plaintiff to show injury to establish *statutory* standing, Murray still must establish that he has Article III "standing for each type of relief" he seeks. *Summers*, 555 U.S. at 493. "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.* (citing *Friends of the Earth v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000)).

For the same reasons the Court concludes that Murray fails to allege facts to show an injury for purposes of statutory standing, it also finds he fails to allege facts showing Article III standing seek injunctive relief on either of his claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Time's motion to dismiss. Because the Court cannot find that Murray would be unable to allege facts to show injury, it GRANTS him leave to amend by no later than September 27, 2012. The Court does not grant Murray leave to amend to include additional plaintiffs or defendants. If Murray fails to file an amended complaint, the Court shall dismiss this case with prejudice, and shall enter a judgment in Time's favor.

**IT IS SO ORDERED.**

Dated: August 24, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE